**Gerald HAYES et al.**

v.

**C. SCHMIDT & SONS, INC.**

No. 73-1954.

United States District Court, E. D. Pennsylvania.

April 10, 1974.

Robert H. Finkel, Philadelphia, Pa., for plaintiffs.

Mark S. Dichter, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

FOGEL, District Judge.

Gerald Hayes, Robert Will and Andrew Dambach, as purported representatives of a class allegedly consisting of all employees of C. Schmidt & Sons, Inc. (hereinafter referred to as plaintiffs), seek to compel their employer (hereinafter referred to as Schmidt) to make contributions to a Profit Sharing Plan maintained by Schmidt for the benefit of its employees.

The action was originally brought in the Court of Common Pleas of Philadelphia County during the August Term, 1973, Docket No. 1810. Schmidt removed the case to this Court pursuant to the provisions of 28 U.S.C. § 1441, in-

voking our original jurisdiction over the controversy under § 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185(a). Plaintiffs did not contest the removal.

Schmidt subsequently filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In an Order dated November 15, 1973, the Court, *sua sponte*, raised the question of federal subject matter jurisdiction, and directed that this issue, as well as Schmidt's motion to dismiss for failure to state a claim, be briefed and argued orally. Counsel thereafter submitted extensive memoranda pertinent to these issues.

The relevant facts are not in dispute, and may be summarized as follows:

For some years prior to 1972, Schmidt maintained a Profit Sharing Plan which provided for contribution by that company of a percentage of its profits for investment for the benefit of most, if not all of Schmidt's employees.[1] The Plan provided for amendment or discontinuance at any time by the company unilaterally, subject to the restriction that the corpus, in effect, was impressed with a trust for active and retired members.[2]

In June, 1972, Schmidt entered into negotiations with Local 183 of the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL–CIO, of which plaintiffs are members. The collective bargaining agreement which emerged from these negotiations contained the following provision with respect to the Profit Sharing Plan:

ARTICLE VI

\* \* \* \* \* \*

SECTION 4. *Profit Sharing*

The participation of the employees in the C. Schmidt & Sons, Inc. Profit Sharing Plan shall terminate as of June 20, 1972. Employees shall be entitled to receive the amount of money standing in their account as of the market value adjustment at the time without regard to the vesting provisions of the plan. Each employee may express a preference as to the method in which such money shall be distributed or held for his account, provided, however, the final decision with respect to such distribution shall remain with the Profit Sharing Committee.

While this provision of the collective bargaining agreement requires termination of the Plan as to the employees cov-

---

1. An "Employee" was defined in Section 1(4) of the Plan as "anyone whose chief occupation is with one of the Companies for a regular fixed compensation at an annual, monthly, weekly, daily, hourly or other periodical rate." An Employee became a member of the Plan on the first day of the fiscal quarter in which he had completed two years of credited service. (Section 2(1)).

2. Sections 11(1) and 11(2) provide as follows:
"SECTION 11. AMENDMENTS, DISCONTINUANCE, LIABILITIES
   1. The provisions of this Plan may be amended at any time and from time to time by Schmidts, provided, however, that no such amendment shall be effective unless the Plan, as so amended, shall be for the exclusive benefit of members; and provided, further, that no amendment shall divest any part of a member's account which has already vested.
   2. The Plan may be discontinued at any time in respect of its employees by any

Company, but only upon condition that such action is taken as shall render it impossible at any time for any part of the corpus of the trust or income thereon to be at any time used for, or diverted to, purposes other than for the exclusive benefit of active and retired members. If the Plan is discontinued by a Company, the Company's operations continuing, the portion of the Fund then credited to members who are employees of such Company shall continue to be held for distribution in precisely the same manner as set forth in Section 7 hereof. If the Plan is discontinued by a Company and the Company dissolves or otherwise ceases operation, each member who is an employee of such Company and who is not immediately employed by one of the other Companies shall be entitled to the full amount standing to his account as of the close of the fiscal quarter in which the Company dissolves or otherwise ceases operation."

ered by the agreement, it does not specifically require a contribution to the Plan for the period from January 1 to June 30, 1972, and Schmidt concluded it was not required to do so. Plaintiffs thereupon filed the instant action in the Court of Common Pleas to compel such a contribution.

In support of its argument that this Court has jurisdiction over the subject matter of the action, Schmidt argues that plaintiffs' claim, if it exists at all, must arise from Article VI, Section 4 of the collective bargaining agreement, because all parties agree that in the absence of this provision, the company would have had the unilateral right to terminate the Plan at will, and plaintiffs would not have had any present claim to the funds in the Plan. Thus, Schmidt contends that the action falls within the purview of § 301, which confers exclusive jurisdiction upon the District Courts of the United States to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * without respect to the amount in controversy or without regard to the citizenship of the parties."

Plaintiffs do not dispute the black letter proposition that federal jurisdiction would in fact attach if their claim arose out of the collective bargaining agree-

ment. However, they contend that the claim arises from the underlying Profit Sharing Plan and not from the collective bargaining agreement, since the Plan predated not only Article VI, Section 4 of the 1972 agreement, but has continued in existence as to other employees who were not members of the plaintiffs' labor organization.[3] They also argue in support of their position that the action was brought in behalf of all Schmidt employees included in the Plan, and not just those covered by their collective bargaining agreement.

If we do not have subject matter jurisdiction, then the case must be remanded to the Court of Common Pleas. Moreover, 28 U.S.C. § 1447(c) gives us the power, *sua sponte*, to remand the matter if it appears that the case was removed improvidently and that we lack jurisdiction, even in the absence of a motion to remand by any party. Rand v. State of Arkansas, 191 F.Supp. 20, 21 (W.D.Ark.1961).

If we determine that we do have jurisdiction over the action, we must then rule upon the motion to dismiss for failure to state a claim upon which relief can be granted, which motion is predicated on plaintiffs' alleged failure to exhaust the mandatory grievance and arbitration procedures established by the collective bargaining agreement.[4]

---

3. Plaintiffs assert that the Plan is still in existence with respect to managerial employees. It appears that the Plan was terminated as to Local 830 of the Teamsters, and possibly as to other trade unions as well, on or about the date on which it was terminated as to the members of plaintiffs' local. Plaintiffs' collective bargaining agreement, however, is the only one now before this Court.

4. Article VII, Sections 1 and 2, of the collective bargaining agreement contain the following provisions with respect to grievances and arbitration, in pertinent part:

"*Section 1 Grievance Procedure*
All grievances involving any controversy, complaint, dispute or misunderstanding arising as to the meaning, application or observance of any provisions of this to a representative of the Employer by

the aggrieved employee or his Steward before any representative of the Employer shall be required to discuss the matter with any representative of the Union. This provision is not intended to prevent officers of the Union from discussing complaints with representatives of the Employer even though no written grievance has been filed as above provided.
*Section 2 Arbitration*
Any dispute, claim or grievance arising out of or relating to the interpretation or application of this Agreement shall be submitted to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association at the request of either party submitted in writing upon the other. The parties further agree that there shall be no suspension of work when such dispute arises and while

As a preliminary matter, we note that the failure by plaintiffs to refer to § 301 in their state court complaint is not dispositive of the question of federal subject matter jurisdiction, since an action may be removed to the District Court when the *real* nature of the claim is federal, irrespective of the characterization given to it by plaintiffs. Geo. D. Roper Corporation, Newark Div. v. Local Union 16, 279 F.Supp. 717 (S. D.Ohio 1968); Fay v. American Cystoscope Makers, 98 F.Supp. 278 (S.D.N.Y. 1951); 1A Moore's Federal Practice ¶ 0.167 [7]. If the rule were otherwise, the principle of federal preemption in this area of labor law could be demolished through litigants' election to omit mention of § 301 in the complaint. Avco Corp. v. Aero Lodge No. 735, Int. Ass'n of Mach. & Aero. W., 376 F.2d 337, 340 (6th Cir. 1967), aff'd, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In the present case, plaintiffs deliberately skirted any reference to § 301 in the state court complaint, although they specifically referred to the collective bargaining agreement in that pleading, and attached relevant portions of the agreement as an exhibit. Our duty, however, is to examine the real nature of plaintiffs' claim, notwithstanding plaintiffs' attempted characterization of it as one based on state law rather than federal substantive labor law. If the action does in fact involve a purported violation of a contract between an employer and a labor organization in an industry affecting commerce, federal jurisdiction is properly grounded on § 301, irrespective of the label a party tries to affix.

If plaintiffs' union had brought this action on their behalf, we would be compelled to conclude that the claim is within the broad jurisdictional mandate of § 301. A collective bargaining agreement exists, and one of its provisions arguably covers the disputed area. Federal jurisdiction exists, even though relief may ultimately be denied on the merits, because a resolution of the matter hinges upon the correct interpretation and application of the terms of the collective bargaining agreement. Chasis v. Progress Manufacturing Company, 382 F.2d 773, 776–777 (3d Cir. 1967); Roadway Express, Inc. v. General Teamsters, Local 249, 330 F.2d 859, 861 (3d Cir. 1964). See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Similarly, if the named plaintiffs had brought the action in their own behalf alone, or if the class consisted only of members of their labor organization, federal jurisdiction would also attach, under the rule of Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), subject, of course, to the limitations imposed in Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

In the instant case, however, plaintiffs purport to represent *all* of the employees of Schmidt who were members of the Plan, and not just the members of plaintiffs' union. This could include members of the Teamsters Local 830, perhaps members of other labor organizations which are covered by separate collective bargaining agreements not now before us, and also non-union managerial employees. Therefore, we will deny, without prejudice, Schmidt's motions to dismiss at this time, but instead will proceed to a class action determination pursuant to Rule 23(c) of the Federal Rules of Civil Procedure and then to a definitive determination with respect to the appropriate forum to entertain this litigation.[5]

it is in the process of adjustment or arbitration. The decision of the Arbitrator shall be final and binding upon the parties."

\*　　\*　　\*　　\*　　\*

5. We need not decide, at this juncture, whether a class action determination can serve to limit or oust federal jurisdiction which would otherwise exist, (see Rule 82 of the Federal Rules of Civil Procedure), or, in the alternative, whether the limit of federal jurisdiction is an appropriate factor to be considered by the Court in a Rule 23(c) proceeding.