**Gerald HAYES et al., Plaintiffs,**

**v.**

**C. SCHMIDT & SONS, INC.,
Defendant.**

**Civ. A. No. 73–1954.**

United States District Court,
E. D. Pennsylvania.

Oct. 4, 1974.

Robert H. Finkel, Philadelphia, Pa., for plaintiffs.

Mark S. Dichter, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

Plaintiffs in this action are employees of C. Schmidt & Sons, Inc., who seek to compel their employer to make contributions to a profit sharing plan. The procedural history of the litigation is set forth in a previous opinion of this Court, reported at 374 F.Supp. 442, in

which Schmidt's original motion to dismiss for failure to state a claim upon which relief can be granted was denied without prejudice pending a class action determination pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs have subsequently withdrawn their motion for class action determination, and the action will therefore proceed on behalf of the named plaintiffs only, all of whom are members in good standing of Local 183 of the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL–CIO.[1]

Thus Schmidt's renewed motion to dismiss, which is predicated upon plaintiffs' failure to exhaust the grievance and arbitration procedures established by the collective bargaining agreement between Local 183 and Schmidt, is now ripe for decision.

Prior to discussing Schmidt's renewed motion, we will briefly reiterate our earlier determination with respect to federal subject matter jurisdiction. The action was originally brought in the Court of Common Pleas of Philadelphia County, and was removed to this Court pursuant to the provisions of 28 U.S.C. § 1441. On proceedings to remand to the Court of Common Pleas, we made a pre-

---

1. The class action aspect of the case was withdrawn by counsel during the course of a hearing for class action determination on September 19, 1974. At a conference held prior to this hearing, the Court reaffirmed its preliminary decision with respect to federal subject matter jurisdiction, see 374 F. Supp. at 445, and directed the parties to file copies of the collective bargaining agreements covering employees alleged to be within the class. Five such agreements were submitted to the Court: Local 183 of the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL-CIO, which also covers members of Local 5 of the Brewery Workers; Local Union No. 830 (salesmen), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America; Local Union No. 830 (drivers, helpers, and deliverymen); Local Union No. 473, affiliated with the International Brotherhood of Firemen and Oilers,

Power House Operations, Ice Plant Employees and Maintenance Men, AFL; District Lodge No. 1, Philadelphia and Vicinity, International Association of Machinists and Aerospace Workers, AFL-CIO. Each of these agreements has substantially the same provision with respect to the termination of the profit sharing plan, but the arbitration clauses differ. At the suggestion of the Court, counsel for the named plaintiffs consulted with representatives of certain of the affected unions concerning their willingness to be included in the purported class, in light of the possible disposition of the action pursuant to the arbitration clauses, and the concomitant binding effect of such a decision upon all of the union members included within the class. After such consultation, counsel moved orally for leave to withdraw the class action aspect of the case, and confirmed this intention by letter to the Court dated September 24, 1974. The motion was granted without opposition.

liminary determination that federal subject matter jurisdiction existed under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), but withheld a final determination pending resolution of the class action question.

Since the class action aspect of the case has now been withdrawn by plaintiffs, we reaffirm our earlier decision that the case falls within the purview of § 301, which confers jurisdiction on the District Courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * without respect to the amount in controversy or without regard to the citizenship of the parties." As we noted in our earlier memorandum, 374 F.Supp. at 445:

> * * * A collective bargaining agreement exists, and one of its provisions arguably covers the disputed area. Federal jurisdiction exists, even though relief may ultimately be denied on the merits, because a resolution of the matter hinges upon the correct interpretation and application of the terms of the collective bargaining agreement. Chasis v. Progress Manufacturing Company, 382 F.2d 773, 776–777 (3d Cir. 1967); Roadway Express, Inc. v. General Teamsters, Local 249, 330 F.2d 859, 861 (3d Cir. 1964). See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Having determined that the action is properly before this Court pursuant to the jurisdictional grant in § 301, and therefore should not be remanded to the Court of Common Pleas, we now consider Schmidt's contention that the case must be dismissed because of plaintiffs' conceded failure to exhaust grievance and arbitration procedures.

Article VII, Sections 1 and 2 of the collective bargaining agreement contain the following provisions with respect to grievances and arbitration, quoted here in pertinent part:

*Section 1  Grievance Procedure*

All grievances involving any controversy, complaint, dispute or misunderstanding arising as to the meaning, application or observance of any provisions of this Agreement must be submitted in writing to a representative of the Employer by the aggrieved employee or his Steward before any representative of the Employer shall be required to discuss the matter with any representative of the Union. This provision is not intended to prevent officers of the Union from discussing complaints with representatives of the Employer even though no written grievance has been filed as above provided.

*Section 2  Arbitration*

Any dispute, claim or grievance arising out of or relating to the interpretation or application of this agreement shall be submitted to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association at the request of either party submitted in writing upon the other. The parties further agree that there shall be no suspension of work when such dispute arises and while it is in the process of adjustment or arbitration. The decision of the Arbitrator shall be final and binding upon the parties.

* * * * * *

Since the named plaintiffs are members of Local 183, which is not itself a party to this action, there can be no argument about their obligation in the first instance *to attempt* to invoke the contract grievance and arbitration procedures before they may bring suit in federal court, in view of the fact that this collective bargaining agreement does not provide otherwise.[2] As the Su-

---

2. The obligation to submit a grievance to arbitration is thus solely contractual, and does not arise by operation of law. Gateway Coal Company v. United Mine Workers of America, 414 U.S. 368, 94 S.Ct. 629, 38 L. Ed.2d 583 (1974).

preme Court stated in Republic Steel Corp. v. Maddox, 379 U.S. 650, 651–653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (footnote omitted):

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. See Humphrey v. Moore, 375 U. S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Labor Board v. Miranda Fuel Co., 2 Cir., 326 F.2d 172. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the "common law" of the plant. LMRA § 203(d), 29 U.S.C. § 173(d); § 201(c), 29 U.S.C. § 171(c) (1958 ed.). Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

The rule of Republic Steel Corporation v. Maddox, *supra,* is inapplicable if the parties to the collective bargaining agreement "expressly agreed that arbitration was not the exclusive remedy." *Id.* at 657–658, 85 S.Ct. at 619. In the instant case, however, the parties to the contract established a comprehensive mandatory grievance and arbitration procedure, which quite obviously does *not* "reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure * * * in favor of judicial suit." *Id.* at 658–659, 85 S. Ct. at 619. To the contrary, the contract terms bespeak the exclusivity of these procedures.

Section 1 of Article VII refers to grievances "involving any controversy, complaint, dispute or misunderstanding arising as to the *meaning, application or observance* of any provisions of this Agreement", while Section 2 refers to "any dispute, claim or grievance arising out of or relating to the *interpretation or application*" thereof (emphasis added). This language is clearly broad enough to cover the issue presented in the instant case, since Article VI, Section 4 of the Agreement provides for termination of the profit sharing plan, and for receipt by employees of "the amount of money standing in their account" as of June 30, 1972, the very crux of the controversy between the parties. Moreover, it appears that the question of Schmidt's contribution to the profit sharing plan for the period from January 1 to June 30, 1972, may have been a subject of negotiation between Schmidt and Local 183 during June of 1972. This contention, which is, of course, an issue of fact to be determined by the arbitrator, may well be material to a proper interpretation of the terms of the collective bargaining agreement.

Our function at this stage of the proceedings, however, is strictly limited to "determining whether there is any reasonable construction of the arbitration clause that would cover the grievance on its face and whether any other provision

of the contract specifically excludes it", International Union of Electrical, Radio and Machine Workers, AFL–CIO v. General Electric Company, 407 F.2d 253, 256 (2d Cir. 1968), cert. den. 395 U.S. 904, 89 S.Ct. 1742, 1746, 23 L.Ed.2d 217 (1969). As the Supreme Court noted in the Steelworkers Trilogy:

* * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

United Steelworkers v. Warrior and Gulf Navigation Company, 363 U.S. 574, 584–585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).

In the recent case of Gateway Coal Company v. United Mine Workers of America, *supra* at n. 2, the Supreme Court once again reiterated the doctrine which unequivocally favors broad rather than narrow interpretation of labor arbitration clauses; in reversing the Court of Appeals for The Third Circuit on the question of the arbitrability of safety disputes under the collective bargaining agreement, the Court said:

* * * This arbitration clause governs disputes "as to the meaning and application of the provisions of this agreement," disputes "about matters not specifically mentioned in this agreement," and "any local trouble of any kind aris[ing] at the mine." Paragraph 3 of the "Miscellaneous"

section of the agreement states that both parties "agree and affirm . . . that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Local and District Disputes' section. . . ." It excepts from the arbitration obligation only those disputes "national in character."

This arbitration provision appears sufficiently broad to encompass the instant dispute. The contractual obligation reaches "any local trouble of any kind aris[ing] at the mine," and the continued presence in Gateway Mine of two particular foremen is plainly a local issue. On its face, this contractual language admits of only one interpretation: that the agreement required the union to submit this dispute to arbitration for resolution by an impartial umpire.

The Third Circuit Court of Appeals avoided this conclusion by reference to an assumed public policy disfavoring arbitration of safety disputes. The majority of that court recognized that the usual federal policy encourages arbitration of labor disputes but reasoned that this presumption of arbitrability applies only to disagreements over "wages, hours, seniority, vacations and other economic matters." 466 F.2d, at 1159. The court thought that safety disputes should be treated as "sui generis," and concluded that it should "reject any avoidable construction of a labor contract as requiring final disposition of safety disputes by arbitration." Id., at 1160. We disagree.

* * * * * *

* * * Certainly industrial strife may as easily result from unresolved controversies on safety matters as from those on other subjects, with the same unhappy consequences of lost pay, curtailed production, and economic instability. Moreover, the special expertise of the labor arbitrator, with

his knowledge of the common law of the shop, is as important to the one case as to the other, and the need to consider such factors as productivity and worker morale is as readily apparent.

The Court of Appeals majority feared that an arbitrator might be too grudging in his appreciation of the workers' interest in their own safety. We see little justification for the court's assumption, especially since the parties are always free to choose an arbitrator whose knowledge and judgment they trust. We also disagree with the implicit assumption that the alternative to arbitration holds greater promise for the protection of employees. Relegating safety disputes to the arena of economic combat offers no greater assurance that the ultimate resolution will ensure employee safety. Indeed, the safety of the workshop would then depend on the relative economic strength of the parties rather than on an informed and impartial assessment of the facts.

We therefore conclude that the "presumption of arbitrability" announced in the Steelworkers Trilogy applies to safety disputes, and that the dispute in the instant case is covered by the arbitration clause in the parties' collective bargaining agreement.

414 U.S. at 375–379, 94 S.Ct. at 635, 38 L.Ed.2d at 590, 591–593 (footnotes omitted).

Plaintiffs have failed to direct our attention to any clause of the collective bargaining agreement which excludes from arbitration disputes with respect to the meaning or interpretation of Article VI, Section 4 thereof. We therefore conclude, pursuant to the rule of Republic Steel Corp. v. Maddox, *supra*, that this action must be dismissed for failure to exhaust contractually mandated grievance and arbitration procedures.

An appropriate Order will be entered accordingly.