627 F.2d 843
 FIRST NATIONAL BANK OF ABERDEEN and First National Bank of
Aberdeen, Redfield Branch, a national banking
corporation, Appellants,
v.
ABERDEEN NATIONAL BANK, also using name First Bank (N.A.)
Aberdeen and the Spink County Branch of the
Aberdeen National Bank, also using name
First Bank (N.A.) Redfield, Appellees.
FIRST NATIONAL BANK OF DULUTH, Appellant,
v.
NORTHERN CITY NATIONAL BANK and Duluth National Bank, Appellees.
 Nos. 79-1612, 79-1644.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 16, 1980.
Decided Aug. 6, 1980.
 
 Lloyd C. Richardson, Jr., Aberdeen, S. D., for appellant in case no. 79- 1612.
 Thomas R. Thibodeau and James A. Wade, Duluth, Minn., for appellant in case no. 79-1644.
 R. D. Miller, Aberdeen, S. D., for appellee in case no. 79-1612.
 David A. Ranheim and Darron C. Knutson, Minneapolis, Minn. for appellee in nos. 79-1612, 79-1644.
 Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, En Banc.
 HENLEY, Circuit Judge.
 
 
 1
 These two consolidated appeals raise the same substantive issue decided by us today in State of North Dakota v. Merchants National Bank & Trust Co., No. 79-1342 (8th Cir. 1980): whether section 30 of the National Bank Act (NBA) preempts the common law of unfair competition insofar as applied to Comptroller-approved name changes by national banks. But unlike the plaintiff in North Dakota, plaintiffs in the present cases commenced their actions in state court and did not join claims as to which federal jurisdiction indisputably existed. The defendant national banks removed the suits to federal court and subsequently secured judgments on the merits. For reasons to be stated, we conclude that in each case the district court lacked removal jurisdiction and should have remanded the case to the state court.
 
 FACTS AND PROCEDURAL BACKGROUND
 No. 79-1612
 
 2
 In January, 1978, the Aberdeen National Bank (defendant herein) applied to the Comptroller of the Currency under section 30 of the NBA[1] to change its name to "FIRST BANK (N.A.)." Pursuant to procedural rules issued by the Comptroller, notice of the proposed change was published in local newspapers and in the Comptroller's regional bulletin, which was mailed to plaintiff First National Bank of Aberdeen and to other competing banks in the Aberdeen, South Dakota, area. The banks were thereby notified of their right to object to the proposed name change and to obtain upon request a hearing before the Comptroller. No objection to the change was filed, and in December, 1978 the Comptroller approved the application. On April 6, 1979 defendant began using its new name.
 
 
 3
 Four days later, on April 10, 1979, plaintiff brought this action for unfair competition in South Dakota state court, seeking to enjoin defendant[2] from using the terms "First" or "1st" or any variation thereof in its new name or "in any other way whatsoever in connection with advertising or labeling in its business or affairs." The complaint alleged that plaintiff, through long use of its name and extensive advertising, had come to be recognized by the public as the "First National Bank," "1st National Bank," "First Bank," or "any derivative thereof which employs the term 'First' or '1st' in conjunction with a national bank." It was further alleged that defendant and its branch had begun using and advertising under the names "First Bank Aberdeen," "First Bank Redfield," "First Bank (N.A.) Aberdeen," and "First Bank (N.A.) Redfield," and that defendant's adoption of these names would mislead the public and would unfairly appropriate plaintiff's reputation and goodwill, in violation of the South Dakota law of unfair competition. The complaint contained no reference to the National Bank Act or to the Comptroller's approval of defendant's name change.
 
 
 4
 Defendant removed the suit to federal district court, primarily on the ground that the action arose under federal law, and plaintiff sought remand. Plaintiff argued, first, that removability of an action must be determined from the complaint, and the complaint in this case was based solely on South Dakota law. Secondly, plaintiff relied on Marquette National Bank v. First National Bank of Omaha, 422 F.Supp. 1346 (D.Minn.1976), for the proposition that the assertion of federal preemption in defense of a state law claim does not provide grounds for federal jurisdiction. Next, plaintiff acknowledged that the Comptroller had approved a change of defendant's name, but disavowed any intent to challenge that decision and stated that its claim of unfair competition was restricted to defendant's use of new names that had not been approved by the Comptroller.[3] Finally, plaintiff rejected the idea that defendant was a "person acting under" the Comptroller or that defendant's adoption of a new name was an "act under color of (the Comptroller's) office," for purposes of removal under 28 U.S.C. § 1442(a)(1).[4]
 
 
 5
 Defendant replied that removal was proper on two alternative grounds. First, defendant contended that section 30 of the NBA preempted the state law of unfair competition insofar as the state law "might otherwise seek to regulate the names under which national banks may conduct their business." Thus, plaintiff's complaint, though phrased solely in terms of state law, actually stated a claim in an area governed exclusively by federal law (section 30), the claim arose under that law, and removal was proper because the district court would have had original jurisdiction. Secondly, defendant maintained the case was properly removed pursuant to 28 U.S.C. § 1442(a)(1).
 
 
 6
 In addition to arguing the removability of the case, defendant moved to dismiss the complaint for failure to state a claim on which relief could be granted. For the purposes of this opinion, it is unnecessary to discuss the parties' arguments on this motion.
 
 
 7
 In June, 1979, the district court denied plaintiff's motion to remand and granted defendant's motion to dismiss.[5] Accepting in major part the arguments of defendant, the court held that, because of the preemptive effect of section 30, plaintiff's claims arose solely under federal law. Removal was therefore proper, since the court would have had original jurisdiction of the action.[6] The court based its dismissal of the complaint on the finding that plaintiff's state rights were preempted and, apparently, on the unstated conclusion that plaintiff had no right of action under the federal statutory scheme.[7]
 
 
 8
 Plaintiff has appealed, arguing that the finding of preemption upon which the district court's rulings were based was incorrect. Appellant seeks remand of the case to the South Dakota state court for decision on the merits.
 
 No. 79-1644
 
 9
 In December, 1977, Northern City National Bank and Duluth National Bank (defendants herein) applied to the Comptroller to change their names to "FIRST BANK (N.A.) Duluth" and "FIRST BANK (N.A.) Duluth West," respectively. The plaintiff, First National Bank of Duluth, objected to the proposed changes and requested a hearing before the Comptroller. At the hearing, plaintiff was allowed to present its evidence, consisting mostly of testimony by its officers, that the new names would be confusingly similar to plaintiff's name and would permit defendants to usurp plaintiff's goodwill in the Duluth, Minnesota, market. Subsequently, in December, 1978, the Comptroller issued his approval of the name changes.
 
 
 10
 Plaintiff did not seek judicial review of this decision. Instead, it immediately brought this suit for unfair competition and deceptive trade practices in Minnesota state court, seeking to enjoin defendants from using the terms "First" or "1st" or any variation thereof in their new names. Plaintiff alleged in its complaint that, through long use of its name and extensive advertising, it had come to be known by the public as the "First National Bank," "1st National Bank," or "any derivative thereof which employs the terms 'First' or '1st' in conjunction with a national bank." It was then alleged that defendants had obtained the Comptroller's approval of the new names stated above, and that implementation of these name changes would confuse and mislead the public and would cause "irreparable injury and damage . . . to the plaintiff's good name, reputation, and business." The complaint made no mention of the National Bank Act and referred to the Comptroller's approval of defendants' new names only in pleading the imminence of the threatened name changes.[8]
 
 
 11
 Defendants removed the action to federal court, and plaintiff sought remand. Like the plaintiff in Aberdeen, it argued that its complaint stated a claim based exclusively on state law and the action therefore could not be removed as arising under federal law. Secondly, plaintiff maintained that the case was not removable under 28 U.S.C. § 1442(a)(1), for the same reasons given by the plaintiff in Aberdeen.[9]
 
 
 12
 In response, defendants contended that section 30 of the NBA
 
 
 13
 wholly supplants state law on the subject of the name under which a national bank may do business. Thus, any action complaining of a national bank's use of a particular name necessarily arises under federal law and is subject to removal under 28 U.S.C. § 1441.
 
 
 14
 Defendants also argued that removal was proper under 28 U.S.C. § 1442(a)(1).
 
 
 15
 In April, 1979, in an unpublished memorandum, Magistrate Patrick J. McNulty recommended that plaintiff's motion to remand be denied. After discussing relevant cases, the magistrate stated a general "guide" to determine whether an action "arises under" federal law for purposes of original or removal jurisdiction: If the complaint discloses, "as innate to the action," the existence of a "basic dispute . . . as to the effect of a federal law" and the "resolution of (this dispute) is necessary to the determination of the rights of the parties," then the action arises under federal law. Applying this principle to the instant case, Magistrate McNulty found there was a "basic dispute" whether "the right of a national bank to change its name in accordance with the (NBA)" was or was not limited by state unfair competition law. The magistrate observed that although "Plaintiff's Complaint (did) not mention federal law . . . that law permeate(d) and mold(ed) the character of the cause of action." The action therefore was said to be one arising under federal law, and the suit was held to be removable.[10]
 
 
 16
 In May, 1979, the district court[11] accepted the magistrate's recommendation and denied remand. Plaintiff then moved for reconsideration and suspension of the ruling until this court's decision of the North Dakota appeal, and for an injunction barring the name changes pending final disposition of the case. Defendants moved for summary judgment on the grounds that section 30 preempted state law insofar as the latter applied to name changes by national banks and that the Comptroller's approval of such a name change, "subject to federal judicial review under the Administrative Procedure Act, is the final word on the subject."
 
 
 17
 The matter was again referred to Magistrate McNulty, who, in June, 1979, recommended that reconsideration of the remand motion be denied, that defendants be granted summary judgment, and that a stay of the name changes be granted pending appeal. The magistrate based his recommendation of summary judgment on his finding that section 30 was preemptive, as defendants argued. In July, 1979, the district judge accepted this recommendation and entered judgment accordingly.
 
 
 18
 Plaintiff appeals from that judgment, urging reversal on the ground that the district court's underlying finding of preemption was incorrect. Appellant requests that the case be remanded to the Minnesota state court for decision on the merits.
 
 DISCUSSION
 
 19
 The appellant in each of these cases, without expressly mentioning subject matter jurisdiction or removal jurisdiction, argues that the case should be remanded to the state court because, contrary to the district court's holding, section 30 of the NBA does not preempt state unfair competition law. Appellants do not, however, question the district courts' premises for denying remand: that preemption of the law on which plaintiff states his claim (Aberdeen ) or a not insubstantial assertion of such preemption (Duluth), converts a case apparently based solely on state law into one arising under federal law. Because we hold these premises invalid[12] and because no other grounds for removal existed, the district courts lacked subject matter jurisdiction and the cases must be remanded to the state courts.
 
 
 20
 In most instances, the removability of an action depends on whether the district court would have original jurisdiction of the action.[13] The general rule is set out in 28 U.S.C. § 1441 (1976), which provides in part:
 
 
 21
 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 
 
 22
 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.
 
 
 23
 Whether removal of the present two cases was proper hinges on defendants' assertion that the causes arose under federal law and the district courts therefore had original jurisdiction under 28 U.S.C. § 1331(a) or 28 U.S.C. § 1337(a).[14]
 
 
 24
 Formulation of a general test for determining when an action "arises under" federal law has eluded the courts for more than a century, see C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3562 (1975) (hereinafter cited as WRIGHT, MILLER & COOPER), and attempts at such a formulation were specifically warned against by the Supreme Court in an in-depth discussion of the subject, Gully v. First National Bank in Meridian, 299 U.S. 109, 117, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936). As stated in Gully, however, certain prerequisites are well established. Perhaps the most basic are that a right created by federal law must be an essential element of plaintiff's cause of action, and that the centrality of this federal claim must appear on the face of the "well-pleaded complaint," unaided by the answer or petition for removal. E. g., Phillips Petroleum Co. v. Texaco Inc., 415 U.S. 125, 127-28, 94 S.Ct. 1002, 1003-1004, 39 L.Ed.2d 209 (1974); Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 662-63, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950); Gully, 299 U.S. at 112-13, 57 S.Ct. at 97; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); Tennessee v. Union & Planters' Bank, 152 U.S. 454, 461-62, 14 S.Ct. 654, 656-657, 38 L.Ed. 511 (1894); Home Federal Savings & Loan Ass'n v. Insurance Department, 571 F.2d 423, 425-26 (8th Cir. 1978); Chandler v. O'Bryan, 445 F.2d 1045, 1055-56 (10th Cir. 1971) (Van Oosterhout, Mehaffy & Gibson, JJ., sitting by designation), cert. denied, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972); Rosecrans v. William S. Lozier, Inc., 142 F.2d 118, 121, 123 (8th Cir. 1944); Jones Store Co. v. Hammons, 424 F.Supp. 494, 498-99 (W.D.Mo.1977); Gatch v. Hennepin Broadcasting Associates, Inc., 349 F.Supp. 1180 (D.Minn.1972). Furthermore, "the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." Gully, 299 U.S. at 113, 57 S.Ct. at 98, quoted in Phillips Petroleum Co. v. Texaco Inc., 415 U.S. at 128, 94 S.Ct. at 1004; and Home Federal Savings & Loan Ass'n v. Insurance Department, 571 F.2d at 426; accord, e. g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. at 672, 70 S.Ct. at 879; The Fair v. Kohler Die & Specialty Co., 228 U.S. at 25, 33 S.Ct. at 411; Louisville & Nashville R.R. v. Mottley, 211 U.S. at 152-54, 29 S.Ct. at 43-44; Tennessee v. Union & Planters' Bank, 152 U.S. at 464, 14 S.Ct. at 657. Thus, it is well settled that the federal question upon which plaintiff relies for original federal jurisdiction, or defendant for removal jurisdiction, must not have entered the case by way of defense. It also follows from the foregoing principles that "the party who brings a suit is master to decide what law he will rely upon and therefore does determine whether he will bring a 'suit arising under' (federal law) by his declaration or bill." The Fair v. Kohler Die & Specialty Co., 228 U.S. at 25, 33 S.Ct. at 411, quoted in Pan American Petroleum Corp. v. Superior Court, 366 U.S. at 662, 81 S.Ct. at 1307.
 
 
 25
 Application of the preceding rules seems to indicate that neither of the present two actions arises under federal law. In neither case does the complaint show a federal right to be an essential element of plaintiff's claim. Nor are the complaints deficient; each appears to set forth a well-pleaded state claim of unfair competition. The issue of federal preemption has entered the cases only by way of defendants' answers or petitions for removal.
 
 
 26
 The defendants, however, have contended, and the district courts have agreed, that a defense of preemption differs from other state law defenses in that preemption completely eliminates the legal foundation of plaintiff's claim, whereas other defenses merely contest the applicability of the state law to the given fact situation. It is argued that, in cases where the defendant alleges preemption and removes the case on that ground, the general rules for determining whether an action arises under federal law should not be followed strictly. Instead, the removal court must look beyond plaintiff's complaint in order to ascertain what law the action really arises under, and for that purpose must determine the validity of defendant's assertion of preemption. If the state law basis of plaintiff's claim is in fact preempted, it is said that the claim necessarily arises under federal law and the removal court has jurisdiction.[15]
 
 
 27
 Many cases support this argument, holding or implying that preemption of the law on which plaintiff founds his claim provides a basis for removal jurisdiction. See, e.g., Avco Corp. v. Aero Lodge No. 735, IAM, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); North Davis Bank v. First National Bank of Layton, 457 F.2d 820, 822-23 (10th Cir. 1972) (by implication), criticized in 13 WRIGHT, MILLER & COOPER § 3562, at 407 n. 31; Johnson v. England, 356 F.2d 44, 46-48 (9th Cir.), cert. denied, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966); Teamsters Local 116 v. Fargo-Moorhead Automobile Dealers Ass'n, 459 F.Supp. 558 (D.N.D.1978); First Federal Savings & Loan Ass'n of Jackson County v. First Federal Savings & Loan Ass'n of Huntsville, 446 F.Supp. 210 (N.D.Ala.1978); Ashley v. Southwestern Bell Telephone Co., 410 F.Supp. 1389, 1392 (W.D.Tex.1976) (dictum); New York v. Local 144, Hotel Services Union, 410 F.Supp. 225 (S.D.N.Y.1976); Rettig v. Arlington Heights Federal Savings & Loan Ass'n, 405 F.Supp. 819, 822-23 (N.D.Ill.1975); City of New Orleans v. United Gas Pipe Line Co., 390 F.Supp. 861, 863 (E.D.La.1974) (by implication); Gardner v. Clark Oil & Refining Corp., 383 F.Supp. 151, 152-53 (E.D.Wis.1974) (dictum); Hayes v. C. Schmidt & Sons, 374 F.Supp. 442, 445 (E.D.Pa.1974) (dictum); Sylgab Steel & Wire Corp. v. Strickland Transportation Co., 270 F.Supp. 264, 269 (E.D.N.Y.1967).
 
 
 28
 At least an equally large body of authority holds to the contrary that an assertion of preemption is a defense to plaintiff's state law claim and not a ground for federal jurisdiction. See, e.g., Washington v. American League of Professional Baseball Clubs, 460 F.2d 654, 660 (9th Cir. 1972); Long Island R. R. v. United Transportation Union, 103 L.R.R.M. 2703 (S.D.N.Y.1980); Nevada v. King, 463 F.Supp. 749, 751-52 (D.Nev.1979); Marquette National Bank v. First National Bank of Omaha, 422 F.Supp. 1346, 1350-53 (D.Minn.1976) (alternative holding); Committee of Interns & Residents v. New York State Labor Relations Board, 420 F.Supp. 826, 831 (S.D.N.Y.1976); Johnson v. First Federal Savings & Loan Ass'n, 418 F.Supp. 1106, 1108-09 (E.D.Mich.1976); New York v. Local 1115, Nursing Home & Hospital Employees Division, 412 F.Supp. 720 (E.D.N.Y.1976); Lowe v. Trans World Airlines, Inc., 396 F.Supp. 9, 12 (S.D.N.Y.1975) (alternative holding); Application of New York, 362 F.Supp. 922, 928 (S.D.N.Y.1973) (dictum).
 
 
 29
 The latter view finds strong support in Home Federal Savings & Loan Ass'n v. Insurance Department, 571 F.2d 423 (8th Cir. 1978), which held that a declaratory plaintiff who seeks to enjoin, on the ground of preemption, the declaratory defendant's pending state court action does not state a claim arising under federal law. The facts of the case were as follows. The defendant Iowa insurance commissioner had begun administrative proceedings to determine whether plaintiff Home Federal, a national savings and loan association located in Iowa, had violated Iowa law prohibiting the conditioning of a loan or credit upon the applicant's first obtaining insurance from a specified agent. Home Federal replied to the commissioner that it was not engaged in the insurance business and that, in any event, the federal law under which it was chartered preempted state regulation of its operations. The commissioner rejected these arguments and found the state statutes applicable.
 
 
 30
 Home Federal sought review of this decision in both state and federal court, requesting the latter to grant declaratory and injunctive relief. The district court held that it had jurisdiction. On appeal this court reversed and remanded with directions to dismiss for lack of jurisdiction. The court's holding was stated as follows:
 
 
 31
 (T)he Commissioner's proceeding against Home Federal was based solely upon alleged violations of Iowa's insurance law and raised no federal question. Home Federal's allegations of preemption and failure to engage in the "business of insurance," asserted in its federal petition, actually are in the nature of defenses to the Commissioner's charges. Hence they will not suffice for federal question jurisdiction here. The case is basically simply an alleged violation of state law. It is not a federal case and is not converted to one by Home Federal's defenses to the state's basic allegations.
 
 
 32
 571 F.2d at 427.
 
 
 33
 In similar vein runs the well-reasoned opinion of Judge Alsop in Marquette National Bank v. First National Bank of Omaha, 422 F.Supp. 1346 (D.Minn.1976). There, a Minnesota national bank brought suit in Minnesota state court against a Nebraska national bank, a Nebraska financial services corporation licensed to operate in Minnesota, and a Minnesota credit bureau. The complaint alleged that defendants violated several Minnesota consumer-protection laws by inducing Minnesota residents to join the Nebraska bank's credit card program and by then assessing higher finance charges than were permitted under Minnesota law. Defendants removed the case to federal court on the ground that 12 U.S.C. § 85, which governs the interest rate national banks may charge on loans, preempted all state regulations on that subject, and therefore plaintiff's claim of excess interest charges arose solely under federal law. The court granted plaintiff's motion to remand, holding that "(f)ederal preemption may offer a valid defense to a state law claim, but preemption does not convert a state law claim to which preemption is a defense into a claim arising under federal law." Id. at 1352 (alternative holding).
 
 
 34
 Here also, we conclude that the defendants' allegations of preemption in Aberdeen and Duluth were defenses to plaintiffs' state law claims and not grounds for removal, the district courts did not have jurisdiction based on a federal question or otherwise, and the cases should be remanded to the state courts.
 
 
 35
 We deem our conclusion not only consistent with authoritative statements on the general principles of federal question jurisdiction, but also necessarily required by the Supreme Court's reasoning and language in Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). In Gully, the defendant national bank had contractually assumed all the assets and liabilities of an insolvent national bank. The state tax collector sought payment of back taxes allegedly owed by the predecessor bank and, when defendant failed to pay them, brought suit upon the contract in state court. Defendant removed the case to federal court, alleging that the case arose under a provision of the National Bank Act which permits states to tax the shares of resident national banks. The district court denied the motion to remand and dismissed the complaint on the merits. This judgment was affirmed by the court of appeals. In reversing the finding of jurisdiction, the Supreme Court stated:
 
 
 36
 The tax here in controversy, if valid as a tax at all, was imposed under the authority of a statute of Mississippi. . . . True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. . . . It must also be consistent with the Constitution of the United States. . . . If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense.
 
 
 37
 299 U.S. at 115, 57 S.Ct. at 99 (emphasis added). Later in the opinion, the Court stated:
 
 
 38
 By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.
 
 
 39
 Id. at 116, 57 S.Ct. at 99 (emphasis added) (citing Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). These quoted passages clearly suggest that the Gully Court believed a defensive assertion of preemption did not give rise to federal question jurisdiction.
 
 
 40
 In coming to decision we are not unmindful of Avco Corp. v. Aero Lodge 735, IAM, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (Douglas, J.). There, the petitioner employer had brought suit in state court to enforce a no-strike clause in its contract with the respondent union. After the state court had granted an ex parte injunction, the union removed the case to federal court. The district court denied petitioner's motion to remand and dissolved the state court's injunction. This order was affirmed by the court of appeals and the Supreme Court.
 
 
 41
 In holding that the case was properly removed, the Court began by characterizing petitioner's suit as one arising under section 301(a) of the Labor Management Relations Act (LMRA).[16] Because its previous decisions had held that the law to be applied in a section 301(a) action is exclusively federal, either statutory or common, the Court concluded
 
 
 42
 that the claim under this collective bargaining agreement is one arising under the "laws of the United States" within the meaning of the removal statute. 28 U.S.C. § 1441(b). It likewise seems clear that this suit is within the "original jurisdiction" of the District Court within the meaning of 28 U.S.C. §§ 1441(a) and (b).
 
 
 43
 Id. at 560, 88 S.Ct. at 1237. The Court expressly based its finding of original jurisdiction on 28 U.S.C. § 1337.[17] Id. at 561-62, 88 S.Ct. at 1237-1238.
 
 
 44
 The Avco holding could be characterized simply as a finding that section 301(a) of the LMRA gives district courts the original jurisdiction required for removal under 28 U.S.C. § 1441(a). Such an approach to finding removal jurisdiction of a labor dispute was taken in Central Metal Products, Inc. v. UAW Local 1249, 195 F.Supp. 70 (E.D.Ark.1961).
 
 
 45
 Avco also might be construed as agreeing with the assertion made in a leading treatise that:
 
 
 46
 When state law has been preempted, removal will depend upon whether it has been replaced by a federal right of action and whether the particular plaintiff's rights under state law clearly have been preempted.
 
 
 47
 14 WRIGHT, MILLER & COOPER § 3722, at 80 (Supp.1978) (footnote omitted). A plaintiff whose state labor law claim is preempted and whose case is removed on that ground will, in most instances, have a federal right of action under section 301(a). Plaintiffs in Aberdeen and Duluth, on the other hand, clearly have no right of action under section 30 or any other provision of the National Bank Act,[18] and in contrast to the clear force of prior LMRA decisions in Avco, the question of preemption in these cases was very much open when the district courts essayed to address it.
 
 
 48
 But however Avco may be interpreted in special circumstances, we are not persuaded that the Supreme Court in Avco intended to invalidate the generally accepted principle that defensive assertion of federal preemption in response to a state law claim may not constitute a ground for removal.
 
 
 49
 Accordingly, the holdings of the district courts that they had removal jurisdiction are reversed, the judgments are vacated and the cases are remanded with instructions to remand to the state courts.
 
 
 
 [1]
 12 U.S.C. § 30 (1976) provides:
 Any national banking association, with the approval of the Comptroller of the Currency, may change its name . . . A duly authenticated notice of . . . the new name . . . shall be sent to the Comptroller of the Currency; but no change of name . . . shall be valid until the Comptroller shall have issued his certificate of approval of the same.
 
 
 [2]
 Although the Spink County Branch of Aberdeen National Bank was designated by plaintiff as a separate party defendant and was described in plaintiff's complaint as a "wholly owned subsidiary" of Aberdeen National Bank, the latter has stated that it and its branch in Spink County are a single legal entity, and we shall refer to them as "defendant." The record clearly shows that defendant filed only one name-change application with the Comptroller and the only change approved by the Comptroller was from "Aberdeen National Bank" to "FIRST BANK (N.A.)."
 
 
 [3]
 Technically, this assertion was correct. As the complaint is now worded, however, plaintiff's whole case rests on the theory that any use by defendant of the term "First" or "1st" in its new name constitutes unfair competition. Trial of the issues on the complaint so broadly read might bring about precisely the kind of conflict that our holding of preemption in State of North Dakota v. Merchants National Bank & Trust Co. is meant to preclude
 On remand, however, plaintiff may seek to amend its complaint to allege that defendant adopted new names which were not approved by the Comptroller and which for reasons other than the mere incorporation of "First" or "1st" violated the unfair competition law of South Dakota. Thus, the state court may have to decide which variations, if any, of "FIRST BANK (N.A.)" are close enough to that approved name to be deemed "approved by the Comptroller."
 We also note that, in its memorandum supporting the motion to remand, plaintiff claimed that defendant, after approval of its new name, "erected signs and advertising similar in nature to the signs and advertisements of plaintiff and . . . deliberately set forth on a course of conduct designed to appropriate all of the value, prestige and good will" associated with plaintiff's name. As we pointed out in the North Dakota opinion, the preemptive effect of § 30 and the immunization from liability gained by a national bank upon the Comptroller's approval of its name change extend only to claims of unfair competition that are based solely on the similarity of the new name itself to that of an existing institution. A national bank that uses its new name in connection with a confusing, deceptive, or misleading logo, letterhead, advertisement, or the like, may remain subject to liability under state unfair competition law.
 
 
 [4]
 28 U.S.C. § 1442 (1976) provides in part:
 (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them . . .:
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
 
 
 [5]
 First National Bank of Aberdeen v. Aberdeen National Bank, 471 F.Supp. 460 (D.S.D.1979), The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota
 
 
 [6]
 In reaching this conclusion, the court found that the value of the right asserted by plaintiff exceeded the $10,000 jurisdictional amount required by the general federal question statute, 28 U.S.C. § 1331(a). Alternatively, the court held that the NBA was an "Act of Congress regulating commerce" for purposes of 28 U.S.C. § 1337(a), which confers jurisdiction of a suit arising under such an act, regardless of the amount in controversy. The court rejected, however, defendant's argument that removal was proper under 28 U.S.C. § 1442(a)(1). See 471 F.Supp. at 466-67
 
 
 [7]
 The court did not mention that plaintiff's unfair competition claim was founded on defendant's alleged use of names not approved by the Comptroller. See note 3 supra. The omission of any such reference was not inconsistent with the theory of preemption adopted by the court: that Congress, in enacting § 30, had "occupied the field" consisting of laws applicable to name changes by national banks. Under this view, a state claim of unfair competition based on a national bank's use of a new name would be preempted, regardless of whether the Comptroller had approved the name
 In the North Dakota case, however, we have rejected this view of the preemptive effect of § 30 and have held that only state law which conflicts with § 30 is preempted by the section. Thus, insofar as plaintiff's unfair competition action is based on defendant's use of names not approved by the Comptroller, the action is not necessarily preempted. See note 3 supra.
 
 
 [8]
 In fact, the complaint did not expressly refer to either federal or state law and did not name the theory on which plaintiff sought injunctive relief. It is clear, however, from statements made by plaintiff's counsel in the state court, soon after filing the complaint, that plaintiff intended to rely solely on state law. Furthermore, in memoranda submitted in the federal district court and in subsequent references, plaintiff has characterized its suit as one for violation of state law relating to unfair competition and deceptive trade practices. The allegations of the complaint seem wholly consistent with this description and, on their face, do not appear to state a claim under any federal law
 
 
 [9]
 See note 4 supra and accompanying text
 
 
 [10]
 The magistrate made the same findings as the Aberdeen court on the presence of the required amount in controversy and the alternative applicability of 28 U.S.C. § 1337. See note 6 supra. Like the Aberdeen court, Magistrate McNulty also held that the action was not removable under 28 U.S.C. § 1442(a)(1)
 
 
 [11]
 The Honorable Miles W. Lord, District Judge, United States District Court for the District of Minnesota
 
 
 [12]
 Our subsequent discussion focuses on the Aberdeen court's theory that the fact of preemption of plaintiff's state law claim is a ground for removal. Our rejection of this theory a fortiori disposes of the Duluth court's belief that a defendant's mere assertion of preemption provides a basis for federal jurisdiction. See note 15 infra
 
 
 [13]
 The only alternative ground for removal jurisdiction asserted by defendants in the two present cases was 28 U.S.C. § 1442(a)(1), quoted in note 4 supra. This section, in part, allows removal of any action brought in state court against a "person acting under" an officer of the United States, "for any act under color of such office." We have carefully reviewed the arguments made on this point in the parties' trial court memoranda, and we agree with the district courts that (1) defendants were not "part(ies) acting under" the Comptroller, and (2) the name changes were not "act(s) under color of (the Comptroller's) office." See notes 6 & 10 supra. We therefore hold that the cases were not removable under 28 U.S.C. § 1442(a)(1)
 
 
 [14]
 28 U.S.C. § 1331(a) (1976) provides in part:
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . .
 Id. § 1337(a) provides in part:
 The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. . . .
 "In all respects other than amount in controversy, Section 1337 and Section 1331 are read alike and the same tests apply in determining whether a case is one 'arising under' federal law." 13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3574, at 503 (1975) (footnote omitted). For purposes of our discussion, we assume the district courts' findings that the value of plaintiffs' rights exceeded $10,000 and that the NBA was an "Act of Congress regulating commerce" were correct.
 
 
 [15]
 This approach to determining the existence of removal jurisdiction was adopted by the Aberdeen court. In contrast, the Duluth court held that the presence of a "basic dispute" between the parties as to preemption was, in itself, enough to confer removal jurisdiction. The only practical difference between the two approaches is a somewhat anomalous result of the Duluth theory: under that analysis, the removal court would retain jurisdiction of a case, even after concluding there was no federal preemption and plaintiff raised only state law claims
 
 
 [16]
 The Labor Management Relations Act § 301(a), 29 U.S.C. § 185(a) (1976), provides in part:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [17]
 See notes 6 & 14 supra
 
 
 [18]
 Although the current rules of the Comptroller provide for an administrative hearing upon request of an interested party, it has been expressly held that neither the NBA nor the Administrative Procedure Act requires the Comptroller to hold a hearing before making his determinations. See, e.g., Camp v. Pitts, 411 U.S. 138, 140, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973) (decision whether to charter a new bank); Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir. 1966) (same); Merchants & Planters Bank v. Smith, 380 F.Supp. 354, 361 (E.D.Ark.1974) (decision whether to permit establishment of a branch bank), aff'd, 516 F.2d 355 (8th Cir. 1975)