667 F.2d 708
 The FIRST NATIONAL BANK IN SIOUX FALLS, a national banking
corporation, Appellant,
v.
NATIONAL BANK OF SOUTH DAKOTA and all its Branches using the
name of First Bank of South Dakota (N.A.)-Sioux Falls, a
national banking corporation and John Heimann, Comptroller
of the Currency, Appellees.
 No. 81-1803.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 15, 1981.
Decided Dec. 29, 1981.
 
 1
 Michael F. Pieplow (argued), Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellant.
 
 
 2
 Dorsey, Windhorst, Hannaford, Whitney & Halladay, David A. Ranheim (argued), Daniel P. O'Keefe, Minneapolis, Minn., for appellee National Bank of South Dakota.
 
 
 3
 Jeffrey L. Viken, Acting U. S. Atty., J. Paul McGrath, Acting Asst. Atty. Gen. U. S. Dept. of Justice, Ronald R. Glancz, James F. E. Gillespie, Jr. (argued), Attys., Litigation Div., Washington, D. C., for appellee Heimann.
 
 
 4
 Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HUNTER,* Senior District Judge.
 
 
 5
 ELMO B. HUNTER, Senior District Judge.
 
 
 6
 The First National Bank in Sioux Falls BSiouxFallsappealsfrom the summary judgment entered by the district court[1], 517 F.Supp. 1296, affirming the Comptroller of the Currency's approval of a name change for National Bank of South Dakota (National Bank) to First Bank of South Dakota (N.A.). The district court ordered a stay of the change pending this appeal. We affirm the decision of the district court.
 
 
 7
 On appeal from the district court, the appellate court "must render an independent decision on the basis of the same administrative record as that before the district court; the identical standard of review is employed at both levels; and once appealed, the district court decision is accorded no particular deference." First National Bank of Fayetteville v. Smith, 508 F.2d 1371, 1374 (8th Cir. 1974), cert. den. 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). The appropriate record on review is not that made by the district court, but the administrative record already in existence. Id.; Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Therefore, we look solely to the administrative record.
 
 Procedural History
 
 8
 Appellee National Bank applied to the United States Comptroller of the Currency (Comptroller) for permission to change its name pursuant to 12 U.S.C. § 30. National Bank has eighteen branches in South Dakota, including branches in Sioux Falls and Rapid City.
 
 
 9
 In response to the published notice of the application, two competing banks objected to the name change, The First National Bank in Sioux Falls BSiouxFalls,appellant, and First National Bank of the Black Hills[2] located in Rapid City. A public hearing on the proposed change was scheduled before the Regional Director for Corporate Activities, Ninth National Bank Region.[3]
 
 
 10
 At the hearing, both the applicant and the two protestants presented witnesses. National Bank's witnesses explained the business justification for the proposed change and stated that they believed there would be no substantial confusion resulting from the name change. Protestants' witnesses relied on the results of similar name changes and concluded that substantial confusion would result.
 
 
 11
 Post-hearing statements were submitted by all parties. Following this submission, the Regional Administrator and the Regional Director for Corporate Activities reviewed the entire record and provided analysis and recommendations. These, together with the record, were forwarded to the Division for Bank Organization and Structure in Washington, D. C. Its director, the Manager of Bank Structure Analysis, and a staff analyst reviewed the record and added their own recommendations and comments. The Comptroller's staff unanimously recommended that the application be approved. On this augmented record, the Deputy Comptroller of the Currency approved the application for name change and later issued a Supplemental Opinion outlining the reasons for his approval. The district court affirmed the Comptroller's approval.
 
 Standard of Review
 
 12
 In reviewing the district court's decision affirming the Comptroller's action, there are three standards of review which must be considered. The first is the one used in reviewing an agency's decision on fact questions. We addressed this standard in First National Bank of Fayetteville v. Smith, 508 F.2d 1371, 1379 (8th Cir. 1974).[4] We relied on the standard of review set out in the Administrative Procedure Act, 5 U.S.C. § 706 (1976):
 
 
 13
 ... To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall-
 
 
 14
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be-
 
 
 15
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 16
 The scope of the "arbitrary and capricious" standard of review is more restrictive than the "substantial evidence" test,[5] and
 
 
 17
 "(a)dministrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis." ... Something more than mere error is necessary to meet the test .... To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case."
 
 508 F.2d at 1376. (Citations omitted.)
 
 18
 In determining whether the Comptroller's action is arbitrary and capricious, the court is required to look at all of the evidence before the Comptroller, and not just the evidence that supports the agency decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 19
 The second standard of review is that used for questions of law, e.g., interpretation of the statutes or the Constitution. The reviewing court is not limited to the arbitrary and capricious standard and it can determine such questions de novo. Dakota National Bank & Trust Co. v. First National Bank, 554 F.2d 345, 350-51 (8th Cir. 1977), cert. den. 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977). However, when it is a question of the interpretation of an agency's own regulation, a third standard is used. In such event, the agency interpretation is entitled to deference by the court and is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); Cohen v. Civil Aeronautics, 657 F.2d 999 (8th Cir. 1981). In addition, the regulation must be consistent with the statute under which it is promulgated. United States v. Larionoff, supra.
 
 The Statute and Regulation
 
 20
 Title 12, section 30, United States Code, states "(a)ny national banking association, with the approval of the Comptroller of the Currency, may change its name ...." In requiring the "approval" of the Comptroller, "Congress intended to confer discretionary authority on the Comptroller," and the Comptroller has implied authority to state publicly, e.g., by rule-making, the manner in which he will exercise that discretion. North Dakota v. Merchant's National Bank & Trust Co., 634 F.2d 368, 380-81 (8th Cir. 1981).
 
 
 21
 Pursuant to this authority, the Comptroller has promulgated his policy statement on change of corporate title as follows:
 
 
 22
 The office considers an application for change of corporate title to be primarily a business decision of the applicant. An application generally will be approved if the proposed new title is sufficiently dissimilar from that of any other existing or proposed unaffiliated bank or depository financial institution so as not to substantially confuse or mislead the public in a relevant market.
 
 
 23
 12 C.F.R. § 5.42(b) (1981).
 
 The Record
 
 24
 The record shows that the reason for the business decision to change the name of the bank was to more closely identify the bank with its parent bank and the other ninety member banks of the First Bank System.[6] National Bank especially desired to be more closely tied with the six other First Bank System affiliates in South Dakota, and the six in southwestern Minnesota, all of which share a common media coverage. The bank officials believed that the use of a common prefix (First Bank) would permit a more efficient marketing of services and would aid customers moving into the area and tourists in identifying this bank with the other banks in the system.
 
 
 25
 The Comptroller found that this was a "legitimate business purpose and (would) benefit the bank, holding company and bank customers." Although FNB Sioux Falls argues that the name change is unnecessary in that National Bank was already sufficiently identified with its holding company, we do not find the Comptroller's finding to be arbitrary and capricious.
 
 
 26
 The more vital dispute is with the Comptroller's finding that the name change will not substantially confuse or mislead the public in the relevant market. Both applicant and protestants presented evidence at the hearing on this issue.
 
 
 27
 Applicant National Bank presented seven witnesses, including prominent bank officials from various banks. These bank officials outlined the extensive educational and advertisement program they had planned to inform the public of the name change. Officials from other banks testified as to their experiences with similar name changes. These witnesses included a bank official from First Bank of North Dakota-Grand Forks and one from First Bank of North Dakota-Fargo. In both of these cities there had been an existing First National Bank and then a competing bank changed its name to First Bank. Another official was from First National Bank in Miles City, Montana, where the other three banks in town also begin with "first." In Miles City, the First National Bank was the original "First" and the others had come into the area later. Although some of these witnesses acknowledged that there had been some confusion with the name changes, these problems involved the post office, where mail properly addressed was misdelivered, and the Federal Reserve Bank, where wire transfers were misdirected.[7] These problems were not the result of customer confusion but were internal problems of the post office and Federal Reserve Bank. One witness also stated that there may have been some confusion among the older type clientele. The witnesses stated, however, that these incidents of confusion were few and short-lived. All of National Bank's witnesses concluded that there would be no substantial confusion in the mind of the banking public.
 
 
 28
 The protestants produced four witnesses to substantiate their claim that the name change was confusing. These witnesses relied heavily on their knowledge of the experiences in Fargo and Aberdeen where similar name changes had occurred.[8] These witnesses related incidents of confusion including misdelivered and misaddressed mail, errors in wire transfers, taxicabs delivering customers to the wrong bank, telephone mix-ups, merchants billing the wrong institution, business deposits made at the wrong bank, and customers going to the wrong drive-up bank or 24-hour automatic teller machine. The witnesses stated that this confusion resulted in much customer inconvenience. The protestants' witnesses concluded that there would be substantial confusion if the name change were allowed.
 
 
 29
 The record further discloses that protestant FNB Sioux Falls had developed the shortened name First Sioux Falls in its advertising and publicity. The officers of FNB Sioux Falls fear that if the name change is allowed, National Bank may shorten its name to First Bank-Sioux Falls, and thereby increase the risk of confusion. The possibility of National Bank using a shortened name or alteration of the approved name is not an issue for us to decide. This appeal is to review the approval of the official name.[9]
 
 
 30
 There was evidence presented to the Comptroller to the effect that the change of name would actually lessen confusion because it would cause closer connection between National Bank and its parent company.
 
 
 31
 In his Supplemental Opinion, the Comptroller concluded that the proposed title was permissible under the policy statement and might even decrease public confusion within the market. He further concluded the name change was in the best interest of the bank and its customers, and that the public would not be substantially confused or misled as a result of the change. In light of all the evidence, we are unable to find the Comptroller's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.
 
 
 32
 Appellant also claims the Comptroller erred in not applying the analogous trademark law or the law of unfair competition as guidelines in interpreting the standard for confusion. The short answer is that the subject of name changes for national banks has been preempted. First National Bank of Aberdeen v. Aberdeen National Bank, 627 F.2d 843 (8th Cir. 1980); North Dakota v. Merchant's National Bank & Trust Co., 634 F.2d 368, 382 (8th Cir. 1980). The Comptroller has no duty to do more than he did.
 
 
 33
 FNB Sioux Falls finally asserts that the Comptroller made an error of law in concluding that a financial institution does not have a proprietary right to the word "first." The general rule is that generic and geographic names are not subject to trade name protection. Wyoming National Bank v. Security National Bank & Trust Co., 572 P.2d 1120, 1123 (Wyo.1977); Personal Finance Co. v. Personal Loan Service, 133 Neb. 373, 275 N.W. 324 (1937). See also, Storm v. Canyon Amusement Corp., 76 S.D. 413, 79 N.W.2d 698 (1956). There are three other financial institutions in Sioux Falls which begin with "first" including First Northwestern Trust Co., First Services Mortgage Corp., and First Federal Savings & Loan Association, as well as numerous other business in the area which also begin with "first." We are not persuaded that any recognized exception to the general rule is properly applicable to the record before us.[10] See, First Federal Savings & Loan Assoc. v. First Finance & Thrift Corp., 207 Ga. 695, 64 S.E.2d 58 (1951).
 
 
 34
 All contentions have been reviewed, including those discussed, and, in summary, our review of the record convinces us that the finding of no substantial confusion was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; that the statement that the bank had no proprietary right to the word "first" was not erroneous; and that the Comptroller's interpretation of his agency's regulation was not plainly erroneous or inconsistent with the statute or regulation. The judgment below is
 
 
 35
 AFFIRMED.
 
 
 
 *
 Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Fred J. Nichol, Senior United States District Judge, District of South Dakota, Southern Division. The appeal was properly filed with the district court pursuant to that court's jurisdiction granted in 28 U.S.C.A. §§ 1331 (Supp.1981) and 1348 (1976)
 
 
 [2]
 First National Bank of the Black Hills did not appeal the Comptroller's decision
 
 
 [3]
 The procedural history of this case is rather complicated. In addition to the procedure before the Comptroller, FNB Sioux Falls commenced this law suit in South Dakota state court, alleging unfair competition. National Bank removed the case to the district court. (The basis for removal was federal preemption which we have since held not to grant removal jurisdiction when used as a defense to a state unfair competition claim. First National Bank of Aberdeen v. Aberdeen National Bank, 627 F.2d 843 (8th Cir. 1980).) After the preliminary approval of the name change by the Comptroller, FNB Sioux Falls filed a motion to amend to add a cause of action challenging the Comptroller's decision and moved for a preliminary injunction to prohibit National Bank from changing its name pending litigation. The district court, after a hearing, permitted the amended complaint, granted the preliminary injunction, ordered that the Comptroller be added as a party, and granted defendant's motion to dismiss the state law unfair competition claim. The action by the district court changed the cause to one purely for review of the Comptroller's decision and the removal question was not raised on appeal
 
 
 [4]
 See also Camp v. Pitts, supra, and Ramapo Bank v. Camp, 425 F.2d 333, 341 (3rd Cir. 1970) ("Courts have, in the main, consistently recognized the wide area of discretion delegated by Congress to the Comptroller in the complex field of national banking and have sustained the exercise of this discretion save in those cases in which it is determined that the action taken was arbitrary, capricious, or contrary to law.")
 
 
 [5]
 5 U.S.C. § 706(2)(E) states that the court can also set aside an agency action and conclusion found to be "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute." In a Comptroller decision such as this, however, a hearing is not required by the statute and sections 556 and 557 do not apply
 
 
 [6]
 If the name change is approved, National Bank will be the last of the 91 member banks to change its name to include First."
 
 
 [7]
 One of the witnesses stated that the Federal Reserve Bank has begun to utilize a number identification system and the confusion would lessen
 
 
 [8]
 National Bank asserted in its brief that the Fargo and Aberdeen experiences should not be considered on review as to this protestant, FNB Sioux Falls, because the witnesses who testified on this subject were called by FNB of the Black Hills and FNB Sioux Falls never made an attempt to correlate those experiences with its own situation. We will consider that the evidence presented at the hearing was intended for both protestants and will review the evidence accordingly. In Aberdeen there was a First National Bank of Aberdeen and a Aberdeen National Bank until Aberdeen National (a member of the First Bank System) changed its name to First Bank-Aberdeen. In Fargo, Merchant's National Bank & Trust Co. of Fargo (a First Bank System member) changed its name to First Bank of North Dakota (N.A.)
 
 
 [9]
 FNB Sioux Falls also argues that the First Bank logo is similar to that of FNB Sioux Falls, and, combined with the placement of the logo to the title, this would further add to the confusion. If the bank "incorporates its new name in a deceptively, confusing, or misleading logo, letterhead, advertisement, or the like, the bank may be subject to liability under state unfair competition law." North Dakota v. Merchant's Bank & Trust Co., 634 F.2d 368, 381-82 (8th Cir. 1980). See also, First National Bank of Aberdeen v. Aberdeen National Bank, 627 F.2d 843, 845 n.3 (8th Cir. 1980)
 
 
 [10]
 Appellant's cited cases are clearly distinguishable in that they all involved situations where the first two words of the titles were identical