**Joseph E. COLEMAN, et al., Plaintiffs,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, et al., Defendants.**

**Civ. A. No. 83–9.**

Special Court,
Regional Rail Reorganization Act.

April 29, 1983.

Harold R. Berk, Philadelphia, Pa. (Harry Lore, William A. Fitzpatrick, Marilyn Young, Morton C. Jacobs, Philadelphia, Pa., of counsel), for plaintiffs.

Jerome R. Richter, Philadelphia, Pa. (Matthew J. Siembieda, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., of counsel), for defendants.

Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

## MEMORANDUM–ORDER

GASCH, Presiding Judge:

This case finds its inception in the continuing rail strike against the Southeastern Pennsylvania Transportation Authority (SEPTA) brought by employees of SEPTA on March 15, 1983 as the result of the failure of the parties to successfully negotiate a collective bargaining agreement.

BACKGROUND

On January 1, 1983, SEPTA assumed the obligation to provide commuter rail service in the Philadelphia region from Conrail. This was done pursuant to the Northeast Rail Service Act of 1981 (NRSA). 95 Stat. 643. Prior to this date, as part of the transfer of service and pursuant to § 510 of the Rail Passenger Service Act (RPSA), as amended by NRSA, SEPTA and the labor organizations representing the transferring employees entered negotiations to establish initial collective bargaining agreements (the "agreements").

When by September 1, 1982, no agreements had been reached, the President, pur-

suant to §§ 510(b) and (c), empanelled an Emergency Board (the "Board") to resolve the parties' dispute regarding the agreements. On November 1, 1982, pursuant to Section 510(e), the Board submitted its initial report to the President and, on December 6, 1982, issued its final report. The final report selected SEPTA's final offer as most reasonable. Only two of the fourteen labor organizations involved accepted SEPTA's final offer.

Despite the fact that agreements were not reached with the majority of labor organizations involved, rail service was continued subsequent to January 1, 1983 due to the agreement of the employees to continue work pending resolution of collective bargaining.

On March 15, 1983, after a two month impasse in negotiations, the labor organizations with whom no agreement had been reached, initiated a strike against SEPTA. That strike continues to the present.

On April 12, 1983, nine individuals and one corporation filed an equity suit in the Court of Common Pleas in Philadelphia seeking a mandatory injunction forcing SEPTA to enter into binding arbitration as to the initial agreements.[1]

On April 14, 1983, SEPTA removed the suit to the Special Court pursuant to the purported applicability of 28 U.S.C. § 1441 et seq.[2]

On the same date, SEPTA moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On April 18, 1983, plaintiffs moved to remand the suit to the Court of Common Pleas asserting as a basis therefor that the complaint asserts only state law claims over which the Special Court lacks jurisdiction.

On April 19, 1983, SEPTA filed suit against the plaintiffs in Civil Action 83–9 seeking a declaration that the Special Court has exclusive jurisdiction over the bargaining dispute and an injunction preventing the plaintiffs in Civil Action 83–9 from prosecuting that suit, or any other, concerning the bargaining dispute. SEPTA's suit is designated Civil Action 83–10.

On this same date, SEPTA moved for an order staying the proceedings in Civil Action 83–9 or, in the alternative, for an order consolidating the two actions.

For the reasons which follow, the Court holds that the motion of plaintiffs for remand to the Court of Common Pleas of Philadelphia County must be denied. Further, the Court holds that this action must be dismissed without prejudice as removal jurisdiction does not exist in this Court.

## DISCUSSION

Plaintiffs contend that this suit must be remanded to the Court of Common Pleas due to the fact that the suit asserts purely state law claims over which this Court lacks jurisdiction. Defendant contends that, under the facts of this case, NRSA has preempted the Pennsylvania Urban Mass Transit Act and that the cause of action therefore arises under federal law thereby making removal proper. Plaintiffs, primarily relying on *First National Bank of Aberdeen v. Aberdeen National Bank,* 627 F.2d 843 (8th Cir.1980), argue that a case is not properly removed to a federal court when the federal question arises from a defensive claim or preemption of federal law over state law claims. SEPTA, in response, invites the Court's attention to the Supreme Court's decision in *AVCO Corporation v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), for the proposition that where federal law "absorbs" state law, there no longer exists an independent source of private rights apart from the federal law. In more practical terms, "the plaintiff[s'] failure to make specific reference in the complaint to a source of federal law that clearly is applicable will not pre-

---

1. The individual plaintiffs are members of the Philadelphia City Council, the state legislature, the Phoenixville School Board, and a number of commuters. The Delaware Valley Citizens Council for Clean Air is also a named plaintiff.

2. The action was designated Civil Action 83–9.

vent removal." 14 Wright, Miller & Cooper, *Federal Practice & Procedure,* § 3722, p. 571 (1976).

Plaintiffs would have the Court believe that because the relief they seek (binding arbitration) is not provided for in Section 510 of RPSA, and that such relief is assertedly available under the Pennsylvania Urban Mass Transit Act, the action does not arise under NRSA and therefore the Court lacks subject matter jurisdiction. The flaw in this logic is that, regardless of the nature of relief sought, the controversy from which the cause of action arises determines whether this Court has jurisdiction.

Put succinctly, this suit arises from the continuing impasse in initial collective bargaining between SEPTA and former employees of Conrail transferring to SEPTA pursuant to the mandatory provisions of NRSA. Section 1152(a) of NRSA provides in part:

> Notwithstanding any other provision of law, the special court shall have original and exclusive jurisdiction over any civil action—
>
> (1) for injunctive, declaratory or other relief relating to the enforcement, operation, execution, or interpretation of any provision of or amendment made by this subtitle, or administrative action taken thereunder to the extent such action is subject to judicial review.

■ This Court has repeatedly emphasized that "[w]hen, as here, the statute's meaning is plain on its face, it must be followed unless doing so would lead to an absurd result or unless the legislative history strongly indicates otherwise." *New Jersey Transit Rail Operations, Inc. v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers,* 550 F.Supp. 1327, 1330 (Sp.Ct.R.R.

R.A.1982). Because the dispute in the instant case arises from a controversy comprehensively addressed by Congress, and because this suit directly or indirectly involves "the enforcement, operation, execution [and] interpretation" of Section 510 of RPSA (as amended by NRSA), it is quite clear to the Court that subject matter jurisdiction of this suit lies exclusively with this Court. This is so because the instant suit seeks, not simply binding arbitration, but "[mandatory] injunctive . . . relief relating to the . . . operation, execution [and] interpretation" of NRSA.

■ However, the fact that this Court has exclusive jurisdiction over the subject matter of this suit, rather than requiring a denial of the motion to remand, mandates dismissal of the suit.[3] As Justice Brandeis stated more than 60 years ago in a case wherein a cause of action had been removed from a state court to a federal court possessing exclusive jurisdiction:

> As the state court was without jurisdiction over . . . the subject matter . . . , the District Court could not acquire jurisdiction over [the subject matter] by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter . . . , the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*Lambert Run Coal Company v. Baltimore & Ohio Railroad Company,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922) (citations omitted); *accord General Investment Company v. Lake Shore & Michigan Southern Railway Company, et al.,* 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922); *Bancohio Corporation v. Fox,* 516 F.2d 29, 31 (6th Cir.1975); *State of Washington v. American League of Professional Baseball*

---

**3.** Additionally, it is not at all clear that this Court is a "district court" within the meaning of 28 U.S.C. § 1441 *et seq.* To so rule would be a useless act for as the ensuing discussion indicates, upon removal of a suit to this Court from a state court, the Special Court would be forced to dismiss the suit thereby frustrating the purpose of the removal statute. The correct course of action for a defendant in such a suit is to initiate an independent action in this Court seeking to enjoin the state court proceeding.

*Clubs,* 460 F.2d 654, 658 (9th Cir.1972). The rule followed in this circumstance, as indicated by case law, is dismissal without prejudice to refiling in the proper federal forum.

Accordingly, it is by the Court this 29th day of April, 1983,

ORDERED that the complaint herein be, and hereby is, dismissed without prejudice; and it is further

ORDERED that plaintiffs' motion to remand be, and hereby is, denied; and it is further

ORDERED that defendants' motion to dismiss be, and hereby is, denied as moot.