Patricia Ann LANGSTON, Appellant,

v.

WILSON McSHANE CORPORATION, as Administrator for the Twin Cities Carpenters and Joiners Pension Fund, and the Twin Cities Carpenters and Joiners Pension Fund, Respondents.

No. A07–2034.

Supreme Court of Minnesota.

Dec. 10, 2009.

Thomas F. DeVincke, Bonner & Borhart, LLP, Minneapolis, MN, for appellant.

Pamela Hodges Nissen, Amanda R. Cefalu, Anderson, Helgen, Davis & Nissen, LLC, Minneapolis, MN, for respondents.

## OPINION

GILDEA, Justice.

The question presented in this case is whether state courts have subject matter jurisdiction under the Employee Retirement Income Security Act (ERISA) to review a plan administrator's determination that a proposed qualified domestic relations order (QDRO) is not "qualified" for purposes of ERISA. The district court held that state courts have concurrent jurisdiction with federal courts to review such decisions by plan administrators. The court of appeals reversed, holding that federal jurisdiction over such decisions is exclusive. Because we conclude that state and federal courts have concurrent jurisdiction to review a plan administrator's determination of whether a proposed QDRO is "qualified," we reverse.

This action arises from the dissolution of the marriage between Gary Langston and appellant Patricia Ann Langston. The Anoka County District Court dissolved the Langston marriage in a judgment and decree dated August 3, 1993. Gary Langston (Gary) was a carpenter and was a participant in respondent Twin Cities Carpenters and Joiners Pension Fund (the Plan), which is administered by respondent Wilson–McShane Corporation. In the judgment and decree, the court awarded Patricia Langston (Langston) a one-half interest in the marital portion of all of Gary's pension benefits. Gary was required to elect survivor benefits and name Langston as his survivor beneficiary. Langston's attorney was responsible for drafting a domestic relations order (DRO) and submitting it for the court's review, and then to the plan administrator to be qualified. Langston's counsel did not submit the DRO to the district court for its consideration until 2005.[1]

In July 2005, the district court issued a domestic relations order (2005 DRO) to implement the terms of the judgment and decree. Counsel submitted the 2005 DRO to the plan administrator, but the plan administrator refused to "qualify" the order because the benefits were already in "pay status." The plan administrator further explained that Langston would not be eligible for survivor benefits because the benefits had already vested, but that Langston could receive some benefits during Gary's lifetime under the "shared payment method" if she submitted a revised DRO.[2]

Langston did not submit a revised DRO to the respondents. Instead, she brought a motion to enforce the 2005 DRO in her marital dissolution action in district court. In this motion, Langston sought to require

---

1. Meanwhile, in 2001, Gary married S.J. In 2004, Gary retired and applied for pension benefits, naming S.J. as his survivor beneficiary.

2. Gary died on October 19, 2005.

the Plan and Wilson–McShane to honor the 2005 DRO. The court denied the motion because neither the Plan nor Wilson–McShane were parties to the post-decree marital dissolution proceeding and therefore the court lacked personal jurisdiction over them.

Langston then commenced a new action by filing a complaint in district court seeking to obtain pension benefits pursuant to the 2005 DRO. Langston brought this action against the respondents, the Plan and Wilson–McShane, but neither appeared. Upon Langston's motion, the court entered a default judgment in her favor on April 18, 2007.

The respondents thereafter moved to vacate the default judgment, arguing both that the state court did not have subject matter jurisdiction over Langston's claim and that the default judgment should be vacated under the four-factor test announced in *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 28, 30, 53 N.W.2d 454, 456 (1952). The district court concluded that it had subject matter jurisdiction and denied the motion to vacate.

Respondents appealed, and the court of appeals reversed, holding that the district court lacked subject matter jurisdiction over Langston's claim. *Langston v. Wilson McShane Corp.*, 758 N.W.2d 583, 590 (Minn.App.2008). The court also held that the district court abused its discretion in balancing the *Hinz* factors and determined that the default judgment should have been vacated. *Id.* at 594. We granted Langston's petition for review on the question of whether the district court had subject matter jurisdiction over Langston's claim.

This action arises under ERISA, which was enacted in 1974 to provide a comprehensive system of federal regulation of private employee benefit plans. *See* Employee Retirement Income Security Act of 1974, Pub. L. No. 93–406, § 514(a), 88 Stat. 897 (codified at 29 U.S.C. § 1144(a) (2006)). Because ERISA provides that pension benefits are not assignable, 29 U.S.C. § 1056(d)(1) (2006), it was initially unclear whether such benefits could be divided between divorcing spouses, *see Samaroo v. Samaroo*, 193 F.3d 185, 187 (3d Cir.1999). In 1984, Congress passed the Retirement Equity Act ("REA"), which made clear that pension benefits could be divided if the division was provided for in a "qualified domestic relations order." *See* Retirement Equity Act of 1984, Pub. L. No. 98–397, § 104(a), 98 Stat. 1433 (codified at 29 U.S.C. § 1056(d)(3)(A) (2006)). To secure benefits, a divorcing spouse must first obtain a DRO that assigns benefits to him or her and then the relevant plan administrator must find that the DRO is "qualified." *See* 29 U.S.C. § 1056(d)(3)(G) (2006).

Congress provided that the plan administrator's determination of whether a DRO is "qualified" under ERISA is judicially reviewable. 29 U.S.C. § 1056(d)(3)(H)(i) (2006). The issue in this case is whether ERISA permits state courts to exercise subject matter jurisdiction and review the plan administrator's determination or whether ERISA vests jurisdiction exclusively in the federal courts. This question of statutory interpretation is subject to de novo review. *See Bode v. Minn. Dep't of Natural Res.*, 612 N.W.2d 862, 866 (Minn.2000).

I.

Langston contends, and the district court held, that in 29 U.S.C. § 1132(e)(1) (2006), ERISA vests concurrent jurisdiction in state courts.[3] Under section

---

**3.** All of the published decisions that have addressed this issue support the proposition that

1132(e)(1), federal courts have exclusive jurisdiction over most civil actions brought under ERISA. But the second sentence of this section provides that "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs [ (a) ](1)(B)." Thus, in order to determine whether the state court had jurisdiction, we must determine whether, as Langston argues, her claim arises under 29 U.S.C. § 1132(a)(1)(B) (2006).

Section 1132(a)(1)(B) allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Langston's complaint alleges that respondents have refused to pay "benefits due [to] her." But respondents offer two reasons why Langston's claim does not fall under section 1132(a)(1)(B). First, respondents argue that to bring a claim under section 1132(a)(1)(B), a plaintiff must be either a "participant" or a "beneficiary." Respondents argue that because Langston is neither, she cannot bring suit under this section. Second, respondents argue that

Langston's complaint alleges a violation of ERISA rather than a violation of the "terms of the plan" and as such, her claim falls under 29 U.S.C. § 1132(a)(3) (2006) and must be brought in federal court. We examine each argument in turn.

## A.

■ We first consider whether Langston is a "participant" or a "beneficiary" for purposes of section 1132(a)(1)(B). Under section 1132(a)(1)(B), only a "participant" or a "beneficiary" may bring a civil claim to recover benefits due to him or her under the terms of the plan. Langston was never enrolled in Gary's pension plan so she is clearly not a "participant." *See* 29 U.S.C. § 1002(7) (2006) (defining "participant"). Therefore, any claims Langston has to the proceeds of the pension must arise from her status as a "beneficiary."

Langston contends that she is a beneficiary under 29 U.S.C. § 1056(d)(3) (2006). This provision provides that an "alternate payee" can be a "beneficiary." *See* 29 U.S.C. § 1056(d)(3)(J). The statute defines "alternate payee" as "any spouse, [or] former spouse ... of a participant who is

state and federal courts have concurrent jurisdiction to review whether a DRO is "qualified." *See, e.g., Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 66–67 (1st Cir. 2008) (rejecting Geiger's argument that state courts do not have jurisdiction to determine whether orders are QDROs and pointing out the "one-sidedness" of the case law against Geiger's position); *Jones v. Am. Airlines, Inc.*, 57 F.Supp.2d 1224, 1232 (D.Wyo.1999) (" '[W]e conclude state courts have subject matter jurisdiction, concurrent with that of the federal courts, over whether a domestic relations order is a QDRO as defined in ERISA ....' " (quoting *Oddino v. Oddino*, 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266, 1275 (1997)); *Bd. of Trustees of the Laborers Pension Trust Fund for N. Cal. v. Levingston (Levingston II)*, 816 F.Supp. 1496, 1501 (N.D.Cal.1993)) ("The Court finds that a

careful parsing of the statutory scheme indicates that Congress intended state and federal courts to have concurrent jurisdiction in determining whether a particular domestic relations order is qualified."); *Oddino v. Oddino*, 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266, 1275 (1997); *Robson v. Elec. Contractors Ass'n Local 134*, 312 Ill.App.3d 374, 245 Ill.Dec. 245, 727 N.E.2d 692, 697 (1999) ("Pursuant to section 1132(e)(1) of ERISA, state and federal courts have concurrent subject matter jurisdiction to construe the ERISA provisions relating to a QDRO...."); *Eller v. Bolton*, 168 Md.App. 96, 895 A.2d 382, 393 n. 6 (2006) ("State and federal courts have concurrent jurisdiction to review a plan's qualification of a state domestic relations order under ERISA and payments made pursuant to such an order.").

recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K). There is no dispute that Langston is an alternate payee, because the district court designated her as such in the 2005 DRO.

Respondents contend that Langston's status as an alternate payee is not sufficient because, under section 1056(d)(3)(J), not all alternate payees are treated as beneficiaries. Rather, respondents argue, only those alternate payees recognized by *qualified* domestic relations orders are beneficiaries. The section respondents cite provides: "A person who is an alternate payee under a *qualified* domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J) (emphasis added). Under respondents' reading of the statute, the DRO must first be "qualified" before an "alternate payee" can be a "beneficiary." Because the plan administrator did not find that the 2005 DRO was "qualified," respondents argue Langston cannot be a "beneficiary." [4] We disagree.

Congress clearly contemplated judicial review of a plan administrator's decision as to whether a DRO is or is not qualified. *See* 29 U.S.C. § 1056(d)(3)(H)(i). This section provides for consideration *"by a court of competent jurisdiction"* of "the issue of whether a domestic relations order is a qualified domestic relations order." *Id.* (emphasis added). While this judicial review is ongoing, the statute provides for a separate accounting of benefits that would have been payable to an alternate payee if the order had been determined to be a qualified DRO. *Id.* In this language, Congress directly describes a circumstance where the plan administrator has denied qualified status.

In section 1056, Congress intended to do two things. First, the statute provides for judicial review that is not limited to federal courts. Second, the statute contemplates that alternate payees, who are the parties adversely affected when a DRO is denied qualified status, are parties to the judicial review process. Our obligation is to construe the statute in its entirety and to give effect to all of its provisions. *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section, as the Government's interpretation requires." (citation omitted) (internal quotation marks omitted)); *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73–74, 93 N.W.2d 690, 698 (1958) ("We apply the fundamental rule of statutory construction that a statute is to be read and construed as a whole so as to harmonize and give effect to all its parts. Moreover, various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain."). When we give effect to these two parts of section 1056, it is clear that Langston is a beneficiary for purposes of section 1132.

Respondents minimize the relevance of the judicial review provision in section 1056, arguing that it refers simply to federal court jurisdiction. But the use of the general term "court of competent jurisdiction," while perhaps not dispositive, sug-

---

**4.** Respondents also claim that Langston does not fit within the definition of "beneficiary" in the main definition section of ERISA. *See* 29 U.S.C. § 1002(8)(2006) ("The term 'beneficia- ry' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.").

gests that Congress intended more than federal courts to exercise jurisdiction over such questions. If Congress had intended to make the federal courts' jurisdiction over such determinations exclusive, it would have referred to the "district courts of the United States" rather than using the more generic term "court of competent jurisdiction." *See Bd. of Trustees of the Laborers Pension Trust Fund for N. Cal. v. Levingston (Levingston II)*, 816 F.Supp. 1496, 1499 (N.D.Cal.1993) ("While this section is hardly dispositive, it seems that if Congress wished to limit jurisdiction to federal courts it would not have used the general term, 'court of competent jurisdiction.'"). After all, Congress used this explicit reference elsewhere within ERISA where exclusive federal court jurisdiction was plainly intended. *See, e.g.*, 29 U.S.C. § 1132(e)(1), (f), (k) (referring to "the district courts of the United States").

 In addition, federalism principles dictate that the phrase "court of competent jurisdiction" includes state courts. Divorce law and domestic relations law are traditionally matters of state concern. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703–04, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (discussing the domestic relations exception to diversity jurisdiction, which divests the federal courts of the power to issue divorce, alimony, and child custody decrees). The United States Supreme

Court has recognized that "when Congress 'intends to pre-empt the historic powers of the States' or when it legislates in 'traditionally sensitive areas' that 'affec[t] the federal balance,'" Congress "must make its intention to do so 'unmistakably clear in the language of the statute.'" *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 543, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (citations omitted); *see also Gregory v. Ashcroft*, 501 U.S. 452, 461, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) ("This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."). Although Congress has clearly removed most ERISA-related litigation from state court jurisdiction in section 1132(e)(1), it is not clear that Congress intended to remove litigation over whether a DRO is "qualified" from state court jurisdiction as well. In the case of this statute, it would have been simple for Congress to make such a "clear statement" if Congress wanted to make federal jurisdiction exclusive. Congress could have written section 1056(d)(3)(H)(i) to refer to a "court of the United States" rather than a "court of competent jurisdiction" and thereby removed all ambiguity. 29 U.S.C. § 1056(d)(3)(H)(i). We decline to read such language into the statute.[5]

---

**5.** The preemption language Congress used in ERISA also confirms that Congress intended to preserve a role for the states in the area of domestic relations. In 29 U.S.C. § 1144(a) (2006), Congress provides for general federal preemption of state law with respect to employee benefit plans. This section states that, except as provided in subsection (b), ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). But 29 U.S.C. § 1144(b) (2006) carves out a specific exception to this general federal preemption with regard to QDROs. Section 1144(b)(7) provides: "Sub-

section (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)...." Thus, section 1144(b)(7), while not addressing the issue of state court jurisdiction directly, indicates that Congress saw the states as retaining a crucial role in the administration and interpretation of QDROs. *Anonymous v. Anonymous*, No. 01–CIV–8438–HB, 2001 WL 1622210, at *2 (S.D.N.Y. Dec.18, 2001) ("Congress has signaled its preference that such disputes be litigated in state courts by expressly exempting QDROs from the normally expansive preemptive effect of

It is also clear, as referenced above, that Congress contemplated that the person injured by the plan administrator's decision not to qualify a DRO, someone like Langston, would be a party to the judicial review of that decision. An "alternate payee" is defined as a person who has a claim to payments from the plan as provided for in a DRO. 29 U.S.C. § 1056(d)(3)(K). The statute requires that the plan administrator give alternate payees notice of the submission of a DRO and specifically describe the procedures identified in the plan for the determination of the qualification status of the DRO. 29 U.S.C. § 1056(d)(3)(G)(i)(I). The plan administrator also must give alternate payees notice of the plan administrator's ruling on qualification. 29 U.S.C. § 1056(d)(3)(G)(i)(II). In the event of judicial review, the statute requires that the plan administrator separately account for benefits that would have been paid to the alternate payee but for the decision not to qualify the DRO. 29 U.S.C. § 1056(d)(3)(H)(i). In order to make these provisions meaningful, an alternate payee—the person adversely affected by the decision—must be able to bring a court action for judicial review of the plan administrator's qualification determination.

Respondents' construction of the statute, however, would preclude alternate payees from bringing any court challenge for review of the denial of qualification. This is so because in order to bring any type of claim under section 1132(a)(1), even one brought in federal court, the plaintiff must be a "participant" or a "beneficiary." 29 U.S.C. 1132(a)(1). Indeed, as discussed below, respondents argue that Langston's claim is in actuality a claim under section 1132(a)(3). Claims under section 1132(a)(3) must be brought in federal court. See 29 U.S.C. § 1132(e)(1).

But suits under section 1132(a)(3) may only be brought by a "participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). Langston is not a participant or fiduciary for purposes of ERISA, so if her claims are to arise under section 1132(a)(3), as respondents contend, she must be a beneficiary. If Langston does not fit within the definition of beneficiary for purposes of section 1132(a)(1)(B), she cannot fit within the definition for purposes of section 1132(a)(3) either. See, e.g., Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); Akers v. Akers, 233 Minn. 133, 141, 46 N.W.2d 87, 92 (1951) (stating that if "money" is interpreted as not including other property in one paragraph of the statute, it should be interpreted as not including other property in another paragraph). Respondents' construction therefore leaves the class of people injured by and likely to challenge the plan administrator's decision not to qualify a DRO without any avenue to do so. Such a construction renders the provision for judicial review in section 1056(d)(3)(H)(i) meaningless.

Finally, respondents' construction of the statute conflates a decision on the merits of the question presented in the case with the question of the court's subject matter jurisdiction. The merits question Langston raises in her complaint is whether the 2005 DRO should have been determined to be "qualified" for purposes of ERISA. Respondents contend, in essence, that the court lacks the power to answer that ques-

ERISA."); see also Scales v. Gen. Motors Corp. Pension Adm'r, 275 F.Supp.2d 871, 877

(E.D.Mich.2003) (citing Anonymous ).

tion because the 2005 DRO was not qualified.

The better construction is that Langston is a beneficiary for purposes of the state court's jurisdiction based on the district court's decision to designate her as an alternate payee in the 2005 DRO. This construction is consistent with the principles followed in the federal courts relating to subject matter jurisdiction. For example, when a defendant seeks to dismiss a complaint brought under federal question jurisdiction, the courts do not hold that only those complaints that state a meritorious federal question fall within the scope of federal subject matter jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–14 & n. 10, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

For all the reasons discussed above and consistent with our obligation to give effect to all of the provisions in the statute, we hold that Langston's designation as an alternate payee in the 2005 DRO makes her a "beneficiary," 29 U.S.C. § 1056(d)(3)(J), for purposes of establishing subject matter jurisdiction for the judicial review under section 1056, of the plan administrator's decision not to qualify the 2005 DRO.[6]

**B.**

■ We next consider whether Langston states a claim arising under section 1132(a)(1)(B) or whether, as respondents contend, Langston's claim should be characterized as arising under section

6. Respondents cite a 1974 congressional committee report and a publication of the Department of Labor (DOL) in support of their position that the state court does not have subject matter jurisdiction. Neither is helpful to the issue presented here.

Respondents cite the 1974 congressional committee report for the proposition that Congress intended federal courts to have exclusive jurisdiction over any claim coming under Title I of ERISA. *See* H.R.Rep. No. 93–1280 (1974) (Conf. Rep.). Because section 1056 falls within Title I of ERISA, respondents argue that Congress intended federal courts to have exclusive jurisdiction over such claims. This argument fails because respondents are citing legislative history from 1974 to interpret a statutory provision added by the REA in 1984. *See Levingston II*, 816 F.Supp. at 1499–1500 (discussing at length the problems with relying on this 1974 committee report in the context of the QDRO provisions added by the REA).

Respondents also cite a DOL publication entitled *The Division of Pensions Through Qualified Domestic Relations Orders.* This publication supports the view of the respondents, explaining that "[i]t is the view of the Department of Labor that a state court ... does not have jurisdiction to determine whether an issued domestic relations order constitutes a 'qualified domestic relations order'" but rather that these claims must be brought "exclusively in federal court." U.S. Dep't of Labor, *The Division of Pensions Through Qualified Domestic Relations Orders* § 1–12 (2001), *available at* http://www.dol.gov/ebsa/publications/qdros.html. Respondents argue that because the DOL has jurisdiction to interpret ERISA, the DOL interpretation of jurisdiction should be given significant weight. But even if it were an official regulatory interpretation of section 1056, court do not defer to an agency's interpretation on a pure question of law, such as subject matter jurisdiction, but review questions of law "de novo." *First Nat'l Bank in Sioux Falls v. Nat'l Bank of South Dakota*, 667 F.2d 708, 711 (8th Cir. 1981); *see also St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989) ("In considering such questions of law, reviewing courts are not bound by the decision of the agency and need not defer to agency expertise.").

1132(a)(3). Section 1132(a)(1)(B) provides that a beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Alternatively, section 1132(a)(3) allows a beneficiary "to enjoin any act or practice which violates any provision of this subchapter or ... to enforce any provisions of this subchapter." Respondents argue that Langston does not state a claim to enforce rights she has under the "terms of the plan," but rather seeks an application of other provisions of ERISA. Specifically, respondents contend that Langston's claim is one made under 29 U.S.C. § 1056, which sets forth the requirements that must be met in order for a DRO to be qualified. 29 U.S.C. § 1056(d)(3)(B).

In advancing this argument, respondents look to the wording of Langston's complaint. Respondents point out that Langston's complaint seeks a declaratory judgment that "the July 2005 Court Order is a QDRO" under 29 U.S.C. § 1056 and a judgment that the respondents' "refusal to remit survivor benefits to Plaintiff violates [ERISA]." Respondents reason that this is not an action for benefits due "under the plan" as required for a section 1132(a)(1)(B) action.[7] Instead, they argue Langston's claim is better characterized as an action "to enjoin any act or practice

which violates any provision of this subchapter" or "to obtain other appropriate equitable relief ... to redress such violations" under section 1132(a)(3). As such, respondents reason that federal courts have exclusive jurisdiction. *See* 29 U.S.C. § 1132(e)(1) (2006) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter....").

But the fact that the complaint has attributes of a claim under section 1132(a)(3) does not mean that it is not also a claim for benefits under the plan. *See Wilson v. Ramacher,* 352 N.W.2d 389, 394–95 (Minn. 1984) (construing the plaintiff's pleadings liberally even where the plaintiff misconstrued the nature of his claim). Moreover, the text of the statute supports Langston's argument that her claim does in fact seek to recover benefits and enforce rights "under the terms of the plan" so as to arise under section 1132(a)(1)(B). The QDRO provisions of ERISA do not independently create *rights* to pension benefits, but rather they simply create an *exception* to the general anti-alienation provisions of ERISA. *See* 29 U.S.C. § 1056(d)(1) (2006). Thus, the rights a former spouse or dependent may claim under a QDRO arise, not under ERISA, but under state domestic relations law and the terms of the plan. Any claim a former spouse

7. In further support of their argument that Langston's claim properly should have been brought in federal court under section 1132(a)(3), respondents cite cases from a number of federal courts to suggest that the determination of whether a DRO is a QDRO involves the application of section 1056 of ERISA rather than the terms of the plan. Respondents suggest that it would be anomalous for state courts to be charged with the interpretation of ERISA's provisions. *See* 29 U.S.C. § 1132(e)(1). The cases respondents cite are inapposite because they do not even discuss the question of concurrent state court

jurisdiction. Many of these cases address the question in the context of removal jurisdiction and thus simply conclude that federal jurisdiction is appropriate, rather than concluding that state court jurisdiction would have been inappropriate. *See, e.g., Rouse v. Daimler-Chrysler Corp. UAW Non–Contributory Plan,* 300 F.3d 711, 714–16 (6th Cir.2002) (holding that a federal court was an appropriate forum to hear a case contesting the validity of a QDRO); *Samaroo v. Samaroo,* 193 F.3d 185, 187–88 (3d Cir.1999); *Hopkins v. AT & T Global Info. Solutions Co.,* 105 F.3d 153, 155 (4th Cir.1997).

might have for benefits must necessarily arise under the "terms of the plan" because the plan itself is the only source of the retirement benefits. *See Oddino v. Oddino,* 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266, 1272 (1997) ("Thus, a former spouse like Mary, who seeks enforcement of a state court order giving her a right to a portion of the participant's plan benefits, is not seeking to enforce ERISA, but to obtain benefits she claims are due her under the terms of the plan and the state court order."). And the fact that Langston asked for equitable relief as well as legal relief does not take her claim outside the scope of section 1132(a)(1)(B). Based on this analysis, we conclude that Langston's claim does not fall solely under section 1132(a)(3), such that it must be brought in federal court.

In conclusion, we hold that state and federal courts have concurrent jurisdiction to review a plan administrator's determination of whether a domestic relations order is "qualified" for purposes of ERISA and that the state district court properly heard Langston's claims pursuant to section 1132(a)(1)(B). We therefore reverse the court of appeals' judgment on the issue of subject matter jurisdiction and remand to the district court for further proceedings consistent with this opinion.[8]

---

8. The court of appeals vacated the district court's default judgment. That part of the court of appeals' decision was not appealed and therefore, on remand, the district court shall vacate the default judgment.