[Cite as *Patterson v. Am. Family Ins. Co.*, 2021-Ohio-3449.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

LAURA L. PATTERSON, et al.

    Appellees/Cross-Appellants

v.

AMERICAN FAMILY INSURANCE
COMPANY, et al.

    Appellant/Cross-Appellee

C.A. No.     20CA0075-M
              20CA0078-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2017-CV-0585

DECISION AND JOURNAL ENTRY

Dated: September 30, 2021

HENSAL, Presiding Judge.

{¶1} Swagelok Associates Welfare Benefit Plan ("Swagelok") has appealed a judgment of the Medina County Court of Common Pleas that granted summary judgment to Eric and Laura Patterson on their declaratory judgment claim and declared that Swagelok does not have a right to subrogation. The Pattersons have cross-appealed the denial of their motion for sanctions. For the following reasons, this Court affirms.

I.

{¶2} The underlying facts of this case are not in material dispute. Mr. Patterson enrolled in a health benefits plan that was offered by his employer, the Swagelok Company. Following his enrollment, Mrs. Patterson was injured in a motor vehicle collision, which she alleges was caused by another driver. Swagelok paid benefits towards Mrs. Patterson's treatment and believes it is entitled to be reimbursed from any sums the Pattersons recover from the other driver. The Pattersons filed a complaint against the other driver and included a claim

against Swagelok, seeking a declaration that Swagelok has no right to subrogation. Swagelok counterclaimed, seeking subrogation. After the Pattersons amended their complaint and discovery ended, both parties moved for summary judgment. The trial court granted judgment to the Pattersons and declared that Swagelok does not have a contractual right to subrogation. The court, however, denied the Pattersons' motion for attorney fees. Swagelok has appealed the court's judgment, assigning four errors. The Pattersons have cross-appealed the denial of their motion for attorney fees, assigning two errors. We will address Swagelok's first three assignments of error together because they each concern the trial court's jurisdiction over the Pattersons' claims against Swagelok.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FINDING SWAGELOK PLAN WAIVED ERISA PREEMPTION OF OHIO'S DECLARATORY JUDGMENT STATUTE AS SUCH CLAIM IS "COMPLETELY PREEMPTED" BY 29 U.S.C. §1132.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY NOT FINDING THE PATTERSONS' ACTION SEEKING TO "ENJOIN", "BAR" OR "PREVENT" AN ERISA PLAN'S PRACTICE OF SEEKING REPAYMENT AS AN ERISA CLAIM UNDER 29 U.S.C. §1132(a)(3) FOR WHICH OHIO STATE LAW COURTS LACK SUBJECT MATTER JURISDICTION.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING THE PATTERSONS' COMPLAINT WAS AN ACTION UNDER 29 U.S.C. §1132(a)(1)(B) WHERE NO PROVISION OF THE ERISA PLAN WAS SOUGHT TO BE ENFORCED AS A REMEDY BUT SOUGHT TO "ENJOIN", "BAR" OR "PREVENT" THE PLAN'S PRACTICE OF SEEKING RECOVERY.

{¶3} In each of its first three assignments of error, Swagelok argues that the trial court did not have jurisdiction to consider the Pattersons' declaratory judgment claim because such

claims have been pre-empted by the Employee Retirement Income Security Act of 1974, commonly known as ERISA. Under Civil Rule 56(C), summary judgment is appropriate if:

> [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶4} In its first assignment of error, Swagelok focuses on the trial court's determination that it waived its preemption argument by not raising it as an affirmative defense in its answer to the Pattersons' amended complaint. According to Swagelok, its preemption defense directly challenged the subject-matter jurisdiction of the trial court, which was not subject to waiver.

{¶5} Civil Rule 8(C) provides that a party shall "set forth affirmatively" "any * * * matter constituting an avoidance or affirmative defense." Rule 12(B) provides that "[e]very defense * * * to a claim for relief * * * shall be asserted in the responsive pleading thereto if one is required," but allows certain defenses to be made by motion instead, such as "lack of jurisdiction over the subject matter" under Rule 12(B)(1). "Affirmative defenses other than those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the

pleadings." *Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St.3d 18, 20 (1998). Rule 12(H)(3), however, provides that, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action."

{¶6} The Ohio Supreme Court has recognized that "[t]he controlling language of Sections 1132(e)(1) and (a)(1)(B), Title 29, U.S. Code, expressly limits the types of actions that may be brought against benefit plans in state courts" and that "[a]ny action that is not included in subsection (a)(1)(B) falls within the exclusive subject matter jurisdiction of federal courts." *Richland Hosp., Inc. v. Raylon*, 33 Ohio St.3d 87, 90 (1987). Thus, Swagelok's argument that the Pattersons' claim was preempted under ERISA concerned the subject matter jurisdiction of the trial court. It, therefore, may be raised by Swagelok at any time. Civ.R. 12(H)(3); *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11. Accordingly, we must conclude that the trial court incorrectly determined that Swagelok waived its preemption defense. The error may have been harmless, however, because the trial court also determined that the Pattersons' claim was not preempted.

{¶7} Regarding whether the Pattersons' claim was preempted, Swagelok argues in its second assignment of error that the Pattersons' declaratory judgment claim must be characterized as a claim under Section 1132(a)(3) that can only be brought in federal court. In its third assignment of error, Swagelok argues that the trial court incorrectly determined that, even if the Pattersons' claim is an ERISA claim under Section 1132(a)(3), it is also a claim under Section 1132(a)(1)(B), which may be filed in state court.

{¶8} In relevant part, Section 1144(a) of Title 29 of the United States Code provides that "the provisions of this subchapter * * * shall supersede any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan[.]"  Section 1132(e)(1) provides that, "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by * * * a participant[.]"  "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) * * * of subsection (a) of this section."  *Id*.  Accordingly, if a claim is brought under Section 1132(a)(1)(B), a state court has concurrent jurisdiction.  If it is not, federal courts have exclusive jurisdiction.

{¶9}  "In determining the scope of its jurisdiction under a federal statute, a state court of general subject-matter jurisdiction possesses a 'deeply rooted presumption in favor of concurrent' state and federal jurisdiction."  *Girard v. Youngstown Belt Ry. Co.*, 134 Ohio St.3d 79, 2012-Ohio-5370, ¶ 16, quoting *Mims v. Arrow Fin. Servs., L.L.C.*, 565 U.S. 368, 378 (2012). Section 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  Section 1132(a)(3) provides that a civil action may be brought by a participant or beneficiary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

{¶10}  In their amended complaint, the Pattersons demanded that the trial court "issue a judgment declaring that [Swagelok] does not have a contractual right to be subrogated * * * or reimbursement by [Mrs. Patterson] for any benefits paid on [her] behalf[.]"  They also demanded a judgment "declaring that [Swagelok] does not have a contractual subrogation or reimbursement

interest for any benefits paid on behalf of [Mrs. Patterson], and barring any exercise of any claimed subrogation/reimbursement interest for benefits paid on [her] behalf."

{¶11} Multiple courts have held that a declaratory judgment action seeking a declaration of rights, status, or other legal relations is an action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" under Section 1132(a)(1)(B). 29 U.S.C. 1132(a)(1)(B); *Edgefield Holdings, LLC v. Gilbert*, No. 02-17-00359-CV, 2018 WL 4495566, *6 (Tex.App. Sept. 20, 2018). Like in this case, in *Bradburn v. Merman*, 12th Dist. Clermont No. CA99-02-11, 1998 WL 1145402 (Oct. 25, 1999), the Bradburns were participants in an employee benefit plan at the time they were injured in an automobile collision. After the plan paid benefits to them, the Bradburns filed for a declaratory judgment that the plan had no right to subrogation. *Id*. at *1. The Twelfth District Court of Appeals determined that the trial court correctly denied the plan's motion to dismiss the Bradburns' declaratory judgment claim on preemption grounds because the claim was "a request by plan participants for the court to enforce their rights under the terms of the plan." *Id*. at *2. That meant the court "had concurrent jurisdiction * * * under the exception set forth in Section 1132(e)(1)[.]" *Id*. Likewise, in *Beasecker v. State Auto Ins. Co.*, 2d Dist. Darke No. 1530, 2001 WL 85782 (Feb. 2, 2001), the Second District Court of Appeals determined that a claim by plan participants regarding whether their benefit plan was entitled to subrogation was a request to enforce their rights under the plan and, therefore, fell under the concurrent-jurisdiction exception to preemption. *Id*. at *5.

{¶12} The Pattersons' claim against Swagelok sought a declaration that Swagelok does not have a contractual right to subrogation and, relatedly, sought to bar Swagelok from exercising any claimed right to subrogation. Although their request can be construed as a civil

action to enforce the terms of the plan under Section 1132(a)(3), it can also be construed as a civil action "to enforce [their] rights under the terms of the plan" under Section 1132(a)(1)(B). "[T]he fact that [a] complaint has attributes of a claim under section 1132(a)(3) does not mean that it is not also a claim for benefits under the plan" under Section 1132(a)(1)(B). *Langston v. Wilson McShane Corp*, 776 N.W.2d 684, 692 (Minn.2009). Upon review of the record, we conclude that the trial court did not err when it determined that the Pattersons' declaratory judgment claim against Swagelok was not preempted. Swagelok's first, second, and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY HOLDING ERISA LAW PROHIBITS ENFORCEMENT OF THE SPD AS PART OF THE ACTUAL "PLAN".

{¶13} In its fourth assignment of error, Swagelok argues that the trial court incorrectly determined that it is not entitled to subrogation under the terms of the plan. According to Swagelok, the subrogation term is contained within the health benefits Summary Plan Description ("SPD") that is incorporated by reference into the "wrap" plan document that concerns all of its various employee welfare benefits. "Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013), quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).

{¶14} As Swagelok notes, its benefits program contains different documents. One is titled "Plan Document" and describes all the various benefits available to employees, including health care, dependent care and flexible spending accounts, life insurance, long-term disability, dental care, vision, accidental death, and others. *See* 29 U.S.C. 1102 (providing for the

establishment of employee benefit plans pursuant to a written instrument and outlining required and optional requirements). Regarding health benefits, the Plan Document provides that "[t]he Health Care Program shall be provided through a Benefits Contract with the insurance carrier noted in Appendix A or shall be self-funded by the Employer." The Plan Document does not contain any provisions that give Swagelok the right of reimbursement or subrogation. Regarding its interpretation, the Plan Document provides that the plan administrator shall use its discretion to interpret its terms and purpose to resolve any conflicts. In the event the administrator "is unable to resolve any conflict between the provisions of this Plan and the Governing Documents, the provisions of the Governing Documents will prevail * * *." "'Governing Documents' means the documents that contain the substantive provisions governing benefits provided by each of the Welfare Programs listed in the attached Appendices." The Plan Document also contains a "Notice of Coverage" section that provides that, "[w]ithin any time limits required by * * * ERISA, Employer shall issue to each Associate a Summary Plan Description, which shall outline the Associate's benefits under this Plan. In the case of any discrepancy between the terms contained in this Plan document and the Summary Plan Description, this Plan document shall control." In Appendix A, the Plan Document identifies the companies that will be administering the medical benefit program and instructs anyone seeking a full description of the benefits to "please read the Governing Documents."

{¶15} The Plan Document thus refers to two other documents: the Governing Documents and the SPD. It clarifies that language in the Governing Documents controls over the Plan Document, but the language of the Plan Document controls over the SPD.

{¶16} The Governing Documents for the medical benefits program were not provided to the trial court. The SPD for the program, however, was provided. The SPD indicates that it

describes the health benefits available to employees and their families and includes summaries of who is eligible, what services are covered and not covered, how benefits are paid, and the employee's rights and responsibilities. *See* 29 U.S.C. 1022 (providing that a summary plan description must be furnished to participants and outlining its required contents). Going through different categories of health care services, the SPD indicates what percentage of expenses is Swagelok's responsibility and what percentage is the employee's responsibility. For many of the categories, it also contains more extensive sections that detail exactly what services are or are not covered and any additional limitations on such coverage. The SPD also contains a section on subrogation and reimbursement that provides that Swagelok has a right to both. Regarding the interpretation of benefits, the SPD provides that Swagelok has sole and exclusive discretion to interpret benefits and any other terms, conditions, limitations, and exclusions under the plan. The SPD also provides, however, that, "[i]f the language, terms or meaning of the actual text of the Swagelok Company Welfare Plan Document differs from language, text or meaning of this Summary, the Swagelok Welfare Plan Document will control." Thus, the SPD, like the Plan Document, indicates that the language of the Plan Document controls over any language in the SPD.

{¶17} Swagelok argues that the Plan Document and SPD are the only two documents that detail the parameters of the health benefits program and that there are no separate "Governing Documents." According to Swagelok, the SPD is the "Governing Documents" and its terms are incorporated into the Plan Document, supplementing that document and adding the subrogation provision. The trial court rejected Swagelok's arguments, noting that the SPD indicates that it is only providing summaries and that the Plan Document does not contain source information about the particulars of the health benefit program. The court reasoned that the

Governing Documents must therefore be the benefits contracts that Swagelok has entered with the companies administering the health benefits program. It noted that the Plan Document's definition of benefit contracts provides that the terms of those contracts are incorporated into the Plan Document, supplementing its provisions. The court also noted that a Swagelok representative testified that Swagelok has a contract with an insurance company that indicates what specific health benefits will be covered.

{¶18} Addressing the relationship between a benefit plan and its summary, the United States Supreme Court has been clear that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but * * * their statements do not themselves constitute the *terms* of the plan * * *." *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011); *McCutchen*, 569 U.S. at 92, fn.1. In *Amara*, the Supreme Court noted that a plan is developed by its sponsor, who creates the basic terms and conditions, including a procedure for amending the plan. *Amara* at 437. The summary, on the other hand, is provided by the plan's administrator. *Id*.; 29 U.S.C. 1024(b)(1). Noting its prior finding that ERISA carefully distinguishes between the role of the plan sponsor and administrator, the Supreme Court concluded that there was "no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions." *Amara* at 437.

{¶19} Swagelok argues that, in some circumstances, a summary document has been deemed part of the plan, such as in *Board of Trustees v. Moore*, 800 F.3d 214 (6th Cir.2015). In *Moore*, however, there was a trust document that authorized the Board to develop a welfare benefits plan, administer the plan, and act as fiduciary to the plan. Instead of drafting a welfare benefits plan, the Board "went straight to [the] creation of a summary plan description[.]" *Id*. at

219. Under those circumstances, because there was no separate plan document and the summary was specifically approved by the Board, the Sixth Circuit construed the summary as the controlling ERISA plan. *Id.* at 220; *see also*, *e.g.*, *Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990) (explaining that the summary document "clearly functioned as the plan document required by ERISA."); *Rhea v. Alan Ritchey, Incorporated Welfare Benefit Plan*, 858 F.3d 340, 344 (5th Cir.2017) (explaining that "SPD was functioning as both an SPD and written instrument.").

{¶20} In this case, the Plan Document contains all the features required of an employee benefit plan. 29 U.S.C. 1102(b) (specifying that a plan must include a procedure for funding the plan, a procedure for administering the plan, a procedure for amending the plan, and the basis on which payments are made to and from the plan). It also incorporates by reference the terms of any benefits contract that Swagelok enters to specify the nature and amount of benefits provided by any of its employee-welfare programs. Unlike in the cases cited by Swagelok, the SPD does not function as both the summary under Section 1022 and the "written instrument" under Section 1102(a)(1). There is also no language in the Plan Document that provides the administrator of the benefit plan authority to amend the Plan Document by including additional terms in the SPD.

{¶21} Upon review of the record, we conclude that the trial court correctly determined that the SPD could not add a subrogation and reimbursement provision to the Plan Document. Because the Plan Document does not contain such provisions and Swagelok did not produce any evidence that the Governing Documents include such provisions, we conclude that the trial court also correctly determined that Swagelok does not have a contractual right to subrogation or reimbursement. Accordingly, the trial court correctly granted summary judgment to the Pattersons. Swagelok's fourth assignment of error is overruled.

CROSS-APPEAL ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT SWAGELOK AND/OR ITS COUNSEL DID NOT VIOLATE R.C. 2323.51 FOR FAILING TO PRODUCE THE PLAN DOCUMENT REQUESTED AND MAKING FALSE STATEMENTS REGARDING ITS EXISTENCE AND THE NATURE OF THE SPDS RELIED ON.

{¶22}  In their first assignment of error, the Pattersons argue that the trial court should have sanctioned Swagelok under Revised Code Section 2323.51 because of its delay in producing the Plan Document and for making false statements regarding the SPD.  Section 2323.51 provides that "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."  R.C. 2323.51(B)(1).  The definition of frivolous conduct includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including * * * causing unnecessary delay * * *[,]" "a needless increase in the cost of litigation[,]" "is not warranted under existing law," "consists of allegations or other factual contentions that have no evidentiary support[,]" or "consists of denials or factual contentions that are not warranted by the evidence[.]"  R.C. 2323.51(A)(2)(a).  "[A]nalysis of a claim under [R.C. 2323.51(A)(2)] boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party."  (Alterations sic.) *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc.*, 9th Dist. Wayne No. 10CA0035, 2011-Ohio-2990, ¶ 32, quoting *Ceol v. Zion Industries, Inc.*, 81 Ohio App.3d 286, 291 (9th Dist.1992).

{¶23}  This Court's standard of review depends on the part of the analysis at issue.  A trial court's factual findings will not be overturned if they are supported by competent, credible

evidence. *S & S Computer Sys., Inc. v. Peng*, 9th Dist. Summit No. 20889, 2002-Ohio-2905, ¶ 9. We review questions of law, such as whether a claim is warranted under existing law, de novo. *Jefferson v. Creveling*, 9th Dist. Summit No. 24206, 2009-Ohio-1214, ¶ 16; *City of Lorain v. Elbert*, 9th Dist. Lorain No. 97CA006747, 1998 WL 195724, *2-3 (Apr. 22, 1998). Finally, we review the decision whether to impose sanctions for improper conduct under an abuse of discretion standard. *Gilcrest* at ¶ 29. An abuse of discretion occurs if the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶24} Following a hearing on the Pattersons' motion for sanctions, a magistrate found that the Pattersons sent Swagelok initial discovery requests that sought the Plan Document required by 29 U.S.C. 1102, the SPD required by 29 U.S.C. 1022, any administrative services contracts, any modification statements, and any contracts between Swagelok and any plan administrators. In October 2017, Swagelok responded and produced the SPD but not the Plan Document. In January 2018, the Pattersons scheduled the deposition of Swagelok's plan representative, but Swagelok sought a protective order. On February 28, 2018, Swagelok supplemented its discovery response and provided the Plan Document. The deposition occurred on April 2, 2018.

{¶25} The magistrate found that Swagelok considered the SPD to be both the controlling plan document and the summary document required by ERISA. Because there is conflicting case law about that issue, he found that Swagelok's failure to produce the Plan Document in October 2017 was not conclusively frivolous conduct. He also found that Swagelok provided the Plan Document voluntarily in February 2018, which was still a month before the deposition of the plan administrator. The magistrate also found that the Pattersons failed to prove that they

were adversely affected by the delay in receiving the Plan Document, noting that they did not identify what specific additional expenses they incurred from the delay. The magistrate also noted that one of Swagelok's primary defenses was whether the Pattersons could even file their action in state court, which was unrelated to the language of the Plan Document or SPD. He found that Swagelok's defense that the court did not have jurisdiction was also not frivolous considering the conflicting case law on the issue. The Pattersons objected to the magistrate's decision, but the trial court overruled their objections. The court determined that Swagelok's initial failure to disclose the Plan Document did not rise to the level of frivolous conduct under the specific facts of this case. It also determined that the legal arguments Swagelok made throughout the case and in its motion for sanctions did not violate Section 2323.51(A)(2)(a). It, therefore, adopted the decision of the magistrate in full and denied the Pattersons' motion for attorney fees.

{¶26} The Pattersons argue that the trial court incorrectly found that they did not request the Plan Document in their initial discovery requests. They also argue that it was not reasonable for Swagelok to believe that it complied with their discovery requests by producing only the SPD. Notably, the Pattersons argue that it was unreasonable for Swagelok's counsel to accept Swagelok's representation that the SPD was the only document pertaining to the health benefits plan. The Pattersons also argue that the court incorrectly determined that they were required to file a motion to compel before seeking sanctions against Swagelok. According to the Pattersons, they could not have filed a motion to compel even if it was required because Swagelok had specifically told them that the Plan Document did not exist. The Pattersons also argue that the eventual production of the Plan Document did not alleviate Swagelok's prior violations and that they did suffer harm from the delay. According to the Pattersons, they explained in various

pleadings that they had to seek additional discovery to address the inconsistencies in the documents Swagelok had produced, resulting in substantial delays and attorney fees. The Pattersons further argue that, under Section 2323.51(B)(1), they were not required to separate out the attorney fees they incurred specifically from the frivolous conduct.

{¶27} Although arguing that Swagelok's conduct was frivolous, the Pattersons do not explain which part of the definition of Section 2323.51(A)(2) the conduct met. We agree that some of the findings made by the magistrate and adopted by the trial court may not be accurate. They are tangential, however, to the primary issue of whether Swagelok's failure to produce the Plan Document with its initial discovery response constituted frivolous conduct.

{¶28} According to Swagelok's benefit program manager, she understood that the SPD was part of a larger and greater document that they referred to as "the Wrap plan." She described the Wrap plan as something that consolidated all of Swagelok's various benefit plans, but she also asserted that amendments to each individual plan might be in the SPD for health benefits, the SPD for vision benefits, and so forth.

{¶29} The trial court found credible that Swagelok considered the SPD to be the controlling document regarding Swagelok's subrogation and reimbursement rights. In support of its finding, the court noted the case law that holds that a SPD can be the controlling plan document under ERISA. The court also noted that the Pattersons did not ask the benefit program manager why Swagelok did not provide the Plan Document with its initial discovery response.

{¶30} Upon review of the record, we conclude that the Pattersons have not established that Swagelok's failure to produce the Plan Document initially "obviously serve[d] merely to harass or maliciously injure" the Pattersons. R.C. 2323.51(A)(2)(a)(i). We also conclude that the trial court correctly determined that Swagelok's position was warranted under existing law

because there is case law holding that a SPD can also be a company's plan document under ERISA. R.C. 2323.51(A)(2)(a)(ii). We further conclude that the Pattersons did not demonstrate that Swagelok's conduct "consist[ed] of allegations or other factual contentions that have no evidentiary support" or "consist[ed] of denials or factual contentions that are not warranted by the evidence" under Sections 2323.51(A)(2)(a)(iii) and (iv).

{¶31} Any misstatements in the magistrate's decision that were adopted by the trial court were harmless. Because the Pattersons did not establish that Swagelok engaged in frivolous conduct, any incorrect statements by the trial court regarding the amount that the Pattersons may recover for such conduct were also harmless. We conclude that the trial court did not err when it determined that Swagelok did not violate Section 2323.51. The Pattersons' first assignment of error is overruled.

CROSS-APPEAL ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ADDRESS WHETHER SWAGELOK AND ITS COUNSEL VIOLATED R.C. 2323.51 FOR FILING THEIR MOTION FOR SANCTIONS.

{¶32} In their second assignment of error, the Pattersons argue that the trial court failed to address whether the motion for sanctions that Swagelok filed against them was frivolous. The Pattersons note that Swagelok requested that the trial court award it attorney fees because they allegedly continued seeking contracts, financial records, and depositions even though it had provided all the documentation it possessed concerning its right to subrogation. Swagelok argued that the Pattersons were needlessly attempting to drive up the cost of the litigation by continuing to seek copious amounts of discovery. According to the Pattersons, Swagelok's motion was frivolous because all their requests were within the bounds of discovery and Swagelok only ever produced the Plan Document because of their additional discovery requests.

{¶33} In its ruling on the Pattersons' motion for attorney fees, the court first considered whether Swagelok engaged in frivolous conduct when it initially failed to disclose the Plan Document. It determined that Swagelok's conduct did not rise to the level of frivolous conduct. The court then wrote: "[n]or can the Court find the legal arguments made by Swagelok during the case or Swagelok's motion for sanctions against the Plaintiffs violates R.C. 2323.51(A)(2)(a)." The trial court, therefore, did consider whether Swagelok's motion for sanctions constituted frivolous conduct. The Pattersons' second assignment of error is overruled.

III.

{¶34} Swagelok's assignments of error are overruled. The Pattersons' assignments of error are also overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

SHAUN D. BYROADS and DARAN KIEFER, Attorneys at Law, for Appellant/Cross-Appellee.

BENJAMIN P. PFOUTS, Attorney at Law, for Appellees/Cross-Appellants.